(No. 30418)
MARY H. HOPKINS, Appellee, *vs.* WILLIAM H. HOPKINS, Appellant.

*Opinion filed January 22, 1948.*

KENNETH A. GREEN, of Mattoon, for appellant.

RYAN & AUSTIN, of Mattoon, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

December 26, 1944, the plaintiff, Mary H. Hopkins, brought an action for divorce against her husband, William H. Hopkins, in the city court of Mattoon alleging that he

deserted her in April, 1941. In addition to a divorce, alimony and solicitor's fees, plaintiff prayed that defendant be ordered to convey the family residence to her. More than a year later, defendant answered and filed a counterclaim for divorce. His amended counterclaim is grounded on the allegation that plaintiff deserted him on December 26, 1944. The cause was tried before a jury and, at the close of all the evidence, the court allowed plaintiff's motion for a directed verdict in respect to her husband's counterclaim. Limited to consideration of plaintiff's action for divorce, the jury found the issues in favor of plaintiff and, in response to a special interrogatory, that defendant had wilfully absented himself from plaintiff without reasonable cause for a period of more than one year. A decree was entered awarding plaintiff a divorce and ordering defendant to convey the real estate in controversy to plaintiff in lieu of alimony and other claims and special equities. Defendant prosecutes a direct appeal, a freehold being necessarily involved.

Plaintiff and defendant were married on June 20, 1920, each then being thirty-one years of age. They resided at 804 Wabash Avenue, Mattoon, premises acquired by defendant in 1914. Employed in a billiard hall when married, defendant later purchased a billiard hall of his own, increasing the mortgage indebtedness on his home for this purpose. Since 1920, defendant's income has steadily decreased. Prior to 1924 he earned approximately $1700 a year; between 1924 and 1930, when he sold the billiard hall, his annual income was $1200 and, thereafter, it dropped to about $1000 a year until 1936. From 1936 through 1940, he received about $300 a year from the operation of a small store at a nearby lake during the summer months, plus whatever he was able to earn when employed in the winter. It further appears that, after 1940 and up to the commencement of this action on December 26, 1944, defendant's earnings were negligible. The

progressive decrease in defendant's income closely parallels his increasingly poor physical condition. Defendant has an exceptionally brittle bone structure and has never been able to do anything more than light work.

At the time of her marriage to defendant, plaintiff had an eight-year old daughter by a previous marriage, had been employed for ten years and was then engaged in taking in washing and ironing. No children were born of her second marriage. Plaintiff continued to do washing and ironing in the home until 1931. Thereafter, she was variously employed in private homes, a furniture store, restaurants, and from June, 1943, to April, 1945, in a war plant at Alton. Plaintiff testified there never was a time during her entire married life when she did not have to work; that she provided the furniture for the house when they were married; that she has always contributed to the payment of household expenses; that she contributed to her husband's purchase of the billiard hall; that all the expenses of two serious illnesses except the second doctor's bill were paid out of her own funds, and that, on two or three occasions, she borrowed money from defendant and repaid him just as she would a stranger.

Plaintiff and defendant have lived apart since April 25, 1941, at which time his mother, Hallie Moberly, suddenly became seriously ill and he moved to her home for the purpose of taking care of her. Mrs. Moberly owned and resided in an eleven-room house at 2820 Prairie Avenue, Mattoon, which was broken up into small apartments. Defendant told his wife it might be five hours, five days or five months before he returned. Actually, he never resumed residence with his wife. Defendant did not work but lived with and was in almost constant attendance upon his mother until her death in 1945. Crippled with arthritis, he did not leave the house except once from January 20, 1943, to December 26, 1944, when both he and his mother were removed to a hospital. By his mother's will, he was

devised a life estate in the premises at 2820 Prairie Avenue and has continued to reside there.

In support of her allegation that defendant deserted her in April, 1941, plaintiff testified that they had not lived together as husband and wife since he moved to his mother's place; that he made no attempt to support her; that, on the contrary, she contributed $50 and other smaller sums to his support; that, from April, 1941, to June, 1945, she paid practically all expenses at 804 Wabash Avenue, including taxes, mortgage payments and repairs, and that defendant never asked her to live with him and his mother until December 18, 1944, when he was badly crippled, unable to take care of either himself or his mother and on the verge of a nervous breakdown.

As to conditions prior to April, 1941, defendant testified that his wife worked contrary to his wishes; that he was able to support his family; that he always gave plaintiff whatever money she asked for, and that he paid virtually all expenses of maintaining the household. Defendant testified that even after April, 1941, he paid a few of the bills on the property at 804 Wabash Avenue; that he requested his wife to live with him at his mother's house and she did not object when he departed; that they did not quarrel but, on the contrary, their relations remained pleasant and friendly until the day she instituted this action; that, after June, 1943, plaintiff rarely failed to visit him on her monthly visits to Mattoon from Alton where she was working; that she wrote fifty-two letters to him from Alton, the last dated December 19, 1944, all homey and friendly; that, because plaintiff's work required her to be in Alton over the Christmas holidays, they had their Christmas dinner together on December 18, 1944, and that before she departed he again asked her to take care of him at his mother's house and she refused, although she offered to live with him in their own house.

In addition, a nurse who attended Mrs. Moberly from June, 1943, to May, 1944, testified that plaintiff visited her husband about six times and the parties did not quarrel. Another nurse testified to two visits in August, 1944, and again the parties did not argue or talk about a divorce. Two tenants who resided at 2820 Prairie Avenue in 1944 related that they observed nothing unusual in the action of the parties toward each other on the occasion of plaintiff's visits. The State's Attorney of Coles County testified that a day or two before Christmas, 1944, at the insistence of Mrs. Moberly's tenants, he requested plaintiff to return from Alton to take care of her husband and his mother, both of whom were then bedfast, and that plaintiff returned to Mattoon but refused to stay at Mrs. Moberly's house.

Defendant contends that plaintiff's motion for a directed verdict on his counterclaim for divorce should have been denied. In his counterclaim, defendant charges that his wife deserted him on December 26, 1944, the day she commenced her action for divorce. Where an action for divorce or separate maintenance is brought in good faith the time consumed in litigation cannot be considered in calculating the statutory period of desertion and is appropriately deemed "time out." (*Holmstedt* v. *Holmstedt*, 383 Ill. 290; *Floberg* v. *Floberg*, 358 Ill. 626.) There is nothing to show that plaintiff did not bring her action in good faith. Consequently, the directed verdict for plaintiff on defendant's counterclaim for divorce was entirely proper.

As a second ground for reversal, defendant contends the verdict of the jury in favor of plaintiff in her action for divorce is contrary to the law and the evidence. The desertion or absence contemplated by the statute as constituting legal grounds for divorce must be wilful and without reasonable cause. (Ill. Rev. Stat. 1947, chap. 40, par. 1; *Holmstedt* v. *Holmstedt*, 383 Ill. 290; *Floberg* v. *Floberg*, 358 Ill. 626; *Chatterton* v. *Chatterton*, 231 Ill.

449.) In the instant case, the separation was not initiated or continued by mutual consent nor was it necessary and proper, and the jury was entitled to find from the evidence presented that defendant's absence was wilful and without reasonable cause. Certainly, there is ample testimony that defendant voluntarily left plaintiff on April 25, 1941; that the parties never resumed the marital relationship after this date; that defendant failed to support his wife or maintain the property at 804 Wabash Avenue; that he preferred to reside with and take care of his mother in her house rather than to live with and support his wife, and that he never asked her to join him at his mother's house until December 18, 1944, when he was in a critical condition, unable to obtain help, refused to send his mother to a hospital and was almost unable to take care of either himself or his mother. While there is some contradictory evidence, the verdict of the jury will not be lightly disturbed. *Shekerjian* v. *Shekerjian,* 346 Ill. 101; *Teal* v. *Teal,* 324 Ill. 207; *Stofford* v. *Stofford,* 299 Ill. 438.

The award of the property at 804 Wabash Avenue to plaintiff lies at the center of the present controversy. The premises, valued at $2000, are improved with a five-room house and a garage. Asserting that this house constitutes practically all his property, defendant relies upon the rule that a divorced wife should not be given substantially all of her former husband's property in lieu of alimony. (*Young* v. *Young,* 323 Ill. 608; *Ross* v. *Ross,* 78 Ill. 402.) Defendant's assertion is contrary to fact. The record discloses that, in addition to owning the fee in the property at 804 Wabash Avenue, defendant acquired a life estate in his mother's eleven-room house and received approximately $30 a month in rentals from the rooms he did not occupy. A decree for alimony should not vest the fee of the husband's realty in the wife unless the wife shows special equities justifying the transfer. (*Anderson* v. *Anderson,* 380 Ill. 435; *Bissett* v. *Bissett,* 375 Ill. 551; *Byerly* v.

*Byerly*, 363 Ill. 517.) Sufficient special circumstances exist in the case at bar to make the award both proper and appropriate. At the time the parties separated, plaintiff had worked continuously and contributed to the family income for twenty-one years. Furthermore, following the separation, plaintiff received practically no assistance from her husband and made payments on the mortgage debt and paid taxes from her own funds. The award of the fee in the property at 804 Wabash Avenue to plaintiff is entirely justified by reason of plaintiff's equity in the property and the special circumstances of the case. *Shekerjian* v. *Shekerjian*, 346 Ill. 101; *Meighen* v. *Meighen*, 307 Ill. 306.

Lastly, defendant urges that the trial court erred in allowing plaintiff attorney's fees of $250 for the purpose of defending the present appeal. His contention is that it is error to allow attorney's fees to the wife where she has a greater ability to pay than her husband. (*Young* v. *Young*, 323 Ill. 608; *Klekamp* v. *Klekamp*, 275 Ill. 98.) At the time of the hearing, plaintiff was steadily employed and earned between $15 and $20 a week. There was no award to plaintiff of temporary alimony or solicitor's fees for the prosecution of the case in the trial court and she still owed her lawyer $165. Defendant owned a life estate in the premises at 2820 Prairie Avenue, had $100 in cash, received about $30 a month by renting rooms, and had borrowed $300 to pay his lawyer and for other purposes. In view of the circumstances in this case it seems equitable that plaintiff's attorney's fees should not have been allowed, and that the cost of this appeal should be divided equally.

The decree of the city court of Mattoon is reversed as to the attorney's fees on appeal, but in all other respects is affirmed.

*Affirmed in part and reversed in part.*