(No. 30548.—

PETER INSODA, Appellee, *vs.* VINCENTA INSODA *et al.*,
Appellants.

*Opinion filed September 24, 1948.*

WILLIAM E. AUSTIN, and THOMAS J. FINNEGAN, both
of Joliet, for appellants.

Francis P. Loughran, and Irving Shutts, both of Joliet, for appellee.

Mr. Justice Wilson delivered the opinion of the court:

February 19, 1946, the plaintiff, Peter Insoda, in the circuit court of Will County, brought an action for divorce against his wife, Vincenta Insoda, on the ground of desertion. The Drovers Trust and Savings Bank, trustee under a land trust executed by the parties, was joined as a party defendant. In addition to a divorce, plaintiff sought a decree setting aside the trust agreement and declaring him the sole owner of the real estate or, in the alternative, an equitable division of the property acquired by the parties through their joint efforts. The cause was referred to a master in chancery who found the issues in favor of plaintiff. Confirming the findings of the master, the chancellor entered a decree for divorce and ordered defendants, as trustee and sole beneficiary under the trust, to convey to plaintiff a one-half interest in the real estate. Vincenta Insoda, hereafter referred to as the defendant, prosecutes a direct appeal, a freehold being necessarily involved.

Plaintiff and defendant were married in Lithuania in 1923. In the following year, they came to this country and lived together in Chicago until April 30, 1944, when they separated. No children were born of the marriage. Defendant had $300 when she arrived in the United States in April, 1924. Plaintiff joined her here a few months later. He worked as a decorator until the latter part of 1936 and turned over all his earnings to his wife, who managed the family finances. Defendant also worked. She was employed in various factories from 1924 to 1929, and thereafter did sewing at home and sold hosiery from house to house. The parties maintained a joint account in a savings and loan association but defendant handled all financial transactions. By 1935, the parties had accumulated savings in the sum of $7000, consisting of mortgage notes, all of which were held in defendant's name.

In December, 1935, defendant opened a lingerie shop in her own name. She operated the business for a full year and then sold the stock in trade at a loss. Thereupon, she started a liquor store at the same location and continued in this business for the first six months of 1937. During the latter part of 1936 and the first part of 1937, plaintiff was in poor health and was incapacitated for work. Although he did not assist defendant in either of her business ventures, their joint savings were employed in both enterprises.

In the latter part of 1937, defendant purchased in her own name a combination tavern and liquor store having living quarters on the second floor. The price of $4500 was paid in cash and approximately $2500 was expended in remodeling. Defendant operated the business and was assisted by her husband. Except for a period of five months in 1938 when he resumed his employment as a decorator, plaintiff worked steadily in the tavern. Defendant allowed or paid her husband a weekly sum variously estimated from $5 to $50. The parties lived together on the second floor above the tavern.

The property in controversy, consisting of fifteen acres of land, improved with a house and located at 147th Street and Archer Avenue in Lockport, Will County, was not purchased until 1940. Defendant took title in her own name. Upon acquisition of the property, she had a new house constructed. The combined cost of the property and the new house was approximately $18,000, of which a sum in excess of $13,000 was represented by mortgage indebtedness. The mortgage loans were repaid within the space of four years. On April 29, 1942, plaintiff joined his wife in executing a deed to the property to the Drovers Trust and Savings Bank, as trustee. It is undisputed that plaintiff signed the deed upon his wife's representation it was necessary to establish a trust to avoid potential loss of the property by reason of liabilities arising out of the Dram

Shop Act. Under the trust agreement, defendant was the sole beneficiary.

In 1944, defendant made a successful sale of the tavern building and business, having been forced to reacquire the business after an earlier sale in 1941. The transfer was completed on April 30, 1944, and the following morning defendant removed to the house in Lockport which had previously been rented. Some furniture from the apartment above the tavern had been moved in 1941. The remainder, defendant either sold or took with her on May 1, 1944. Plaintiff continued to reside in a room above the tavern and accepted employment from the new owner of the business.

Seeking a reversal, defendant first attacks the part of the decree awarding plaintiff a divorce on the ground of desertion. In Illinois, desertion, to constitute legal cause for divorce, must exist for the space of one year and must be wilful and without reasonable cause. (Ill. Rev. Stat. 1947, chap. 40, part 1; *Holmstedt* v. *Holmstedt*, 383 Ill. 290.) Defendant contends that the parties separated by mutual consent. To this, she adds, somewhat inconsistently, an informal assertion that she left plaintiff with reasonable cause. At the trial, plaintiff testified that he lived with his wife until they separated, and never struck her, swore at her, or went out with other women and always turned his pay checks over to her. According to plaintiff, on April 30, 1944, defendant told him she was through with him, that she was moving to the Lockport property, and that he could not move with her because she owned the property and did not want him. Plaintiff was corroborated to the extent that two men present in the tavern on the evening of April 30 testified defendant said, "I am glad, damn glad to be rid of the business and him too. I want nothing more of him. Pete, I don't want anything to do with you, we are through." It further appears that defendant sold her husband's bed and delighted in relating the fact.

To establish a nonwilful desertion, defendant advances the theory that the separation occurring April 30, 1944, was a business separation and that she had to surrender possession of the tavern to the new owner while plaintiff remained there to work in the tavern. Furthermore, defendant testified that, prior to her removal to Lockport, she asked plaintiff to join her; that, subsequently, plaintiff visited her three times and proposed divorce, while, on one occasion, she offered reconciliation. Plaintiff admitted the visits but denied that defendant offered to return to him. Two witnesses corroborate his testimony that, on the third visit, defendant ordered him out of the house, swore at him and threatened to shoot him. Temporarily abandoning her theory of separation by mutual consent, defendant testified that she left her husband for reasonable cause, the cause assigned being her husband's alleged affair with another woman, commencing about 1942, and ripening into a semipermanent adulterous relationship several months after the parties separated. Corroborated to a certain extent by other witnesses, defendant's testimony in this respect was flatly denied by plaintiff.

Reduced to its essentials, defendant's first contention amounts to the assertion that the decree for divorce in favor of her husband is contrary to the manifest weight of the evidence. While the evidence is conflicting, the record contains ample testimony to support the findings of the chancellor. Both the master, who heard the testimony and saw the witnesses, and the chancellor, found that defendant had wilfully deserted her husband for the space of one year without reasonable cause. The decree for divorce is not contrary to the manifest weight of the evidence.

Defendant's second contention relates to the part of the decree awarding plaintiff a one-half interest in the property at Lockport. In this connection, defendant asserts (1) no special equities were alleged in the complaint, (2) plaintiff's execution of the trust deed constituted a gift, and (3) the

deed in trust can be attacked only upon grounds of fraud. With respect to the first argument, it is well established that where special equities are claimed, justifying the conveyance of property of one spouse to the other, the special circumstances must be alleged in the complaint and established by proof. (*Ward* v. *Sampson,* 395 Ill. 353; *Skoronski* v. *Skoronski,* 395 Ill. 301.) In the complaint in the instant case, plaintiff alleges that he worked and gave to defendant a large sum of money derived from operating a tavern, that defendant used the money to buy certain described real estate in Lockport, and that defendant procured his signature to the trust agreement through false representations and deceit. Although plaintiff originally claimed all the property in Lockport, by his amended complaint he sought the alternative relief of "an equitable division of the property held by the defendant which was acquired by the joint efforts and earnings of plaintiff and defendant, Vincenta Insoda; that said defendant be ordered to assign to plaintiff such interest as the court shall find he is entitled to in the property held by the Drovers Trust and Savings Bank, as trustee; and that Drovers Trust and Savings Bank, as such trustee, be required to recognize and accept such assignment." The allegations of the amended complaint adequately informed defendant of plaintiff's charge that the Lockport property was acquired through the joint efforts of the parties. Furthermore, the special circumstances alleged are sufficient to warrant a decree ordering an equitable division of the real estate.

Defendant next contends that the conveyance of whatever interest plaintiff had in the property to the trustee of a trust wherein his wife was the sole beneficiary is presumed to be a gift. The contention is without merit. Simply stated, the facts of the instant case fully rebut the presumption of a gift. Defendant admits that the only reason plaintiff joined her in the execution of the deed in trust was to assist her in eliminating the possibility of loss

arising out of the operation of the Dram Shop Act. The evidence further discloses that defendant conducted their financial affairs, and all property of any importance was customarily held in her name.

Lastly, defendant argues that the deed in trust can be set aside only upon the ground of fraud and asserts that the record is utterly barren of any evidence of fraud. Here, defendant confuses the two theories of the amended complaint. Originally, plaintiff alleged only fraud but, by amendment to the complaint, he prayed to be adjudged the owner of part of the property on the additional theory of equitable division of property acquired by the joint efforts of the parties. In addressing her argument solely to the allegations of fraud, defendant fails to recognize that the court granted relief to plaintiff on the basis of an equitable division of the property. Where the rights of third parties do not intervene, it is, of course, immaterial in making a division of property, whether the legal title be held in the name of either spouse, a nominee of either party, or in trust. In all such cases, the court, upon proper allegations and proof, has the authority to order a conveyance to the spouse deemed to be the equitable owner by reason of existing special circumstances and equities. *Bissett* v. *Bissett*, 375 Ill. 551; *VanVleet* v. *DeWitt*, 200 Ill. 153.

Significantly, defendant makes no specific contention that the finding of the chancellor as to plaintiff's interest in the property is contrary to the evidence. On the other hand, since the assertion does appear in the brief interwoven in the various phases of defendant's second contention, it may be well to add a few words in this connection. Defendant takes the position that the $7000 accumulated by 1935 was saved out of her earnings alone, that she invested the money in her own tavern in 1937, where she employed her husband, and that she purchased the property in Lockport from the profits of her tavern and the pro-

ceeds of its sale. Defendant's assertion to the contrary, the evidence is clear and convincing that plaintiff worked and turned over his pay checks to his wife, that the savings resulted from their joint efforts, that defendant managed all financial transactions, that the tavern was purchased with the joint savings of the parties, and that plaintiff worked at the tavern and contributed to its profits, which, in turn, were invested in the real estate in controversy.

The decree of the circuit court of Will County is affirmed.

*Decree affirmed.*