(No. 33466.

CHARLES M. CROSS *vs.* LORENE CROSS, Appellant,— (ELEANOR CROSS, Appellee.)

*Opinion filed March 24, 1955.*

BERRY & SIMMONS, of Rockford, for appellant.

KNIGHT, HAYE & KEEGAN, and T. O. PRATHER, both of Rockford, for appellee.

Mr. CHIEF JUSTICE BRISTOW delivered the opinion of the court:

Lorene Cross, divorced wife of Charles M. Cross, instituted supplemental proceedings against his estate after his death to recover permanent alimony and part or all of her ex-husband's real and personal property, or a dower interest therein, on the ground that the questions of permanent alimony and property rights were expressly reserved for future determination in the original decree of divorce granted to her pursuant to her counterclaim.

The circuit court of Winnebago County entered a decree denying Lorene Cross, referred to as appellant herein, any interest in her deceased ex-husband's estate, either in the nature of alimony, dower, homestead, or any interest based on equitable considerations, and found the issues in favor of the decedent's second wife, Eleanor Cross, referred to as appellee in this cause, who was the sole legatee and devisee under his will. From that decree a direct appeal has been taken to this court, inasmuch as a freehold is involved.

The issue presented is essentially whether a divorced wife, after the remarriage and death of the ex-husband, may be entitled to all or part of the property owned by the deceased husband, either as an award of alimony in gross under section 18 of the Divorce Act (Ill. Rev. Stat. 1953, chap. 40, par. 19,) or on the basis of special equities in the property arising out of the circumstances, as provided in section 17 of that act, where all questions relating

to alimony and property rights were expressly reserved for further determination by the terms of the divorce decree.

The established facts and sequence of pleadings and appeals appearing from the record indicate that appellant, Lorene Cross, married Charles Cross in 1920, and he moved into the home appellant had maintained for herself and her infant children from a previous marriage which had been terminated by the death of her husband. To this marriage with Cross appellant brought $800 in cash, and all linens, china and silverware which were used by the Cross family.

In 1921 appellant bore Cross a son, who was reared and educated to manhood and was killed in the service in World War II. In 1922 the family rented the house at 716 N. Horsman Street, Rockford, Illinois, from one Wheeler, who was Charles Cross's employer and family benefactor through the years. The property was purchased from Wheeler in 1928, and, unknown to appellant, title was taken by Cross alone. It was not until the separation in 1947 that the wife discovered the status of the title. The children grew up with the understanding from family conversations that the house belonged to both appellant and her husband. Appellant's daughter, who was about ten years old at the time the house was purchased, recalled that there was some conversation to the effect that "we are buying the house, it is going to be our home rather than Mr. Wheeler's." She explained that she recalled these circumstances relating to the purchase, since it was the occasion of her mother's going to work, which event was meaningful to the children because they were used to having their mother at home, and they were told that additional funds were needed for the purchase of their house.

Appellant's son also testified that during a family conversation concerning his class in high school business law, where they were studying joint tenancies and tenancies in

common, Charles Cross had said that their property was held in joint tenancy.

In 1928, at the time the house was purchased, appellant went to work as a manager of a millinery store, earning between $20 and $30 a week, until the store went out of business in 1929. She then worked as a saleslady at Montgomery Ward's, earning $20 a week for some months, until she quit because of an appendectomy. Appellant again secured employment outside the home in 1934, when she worked at a confectionary store on the Wheeler Lumber Yard property, at a salary of $15 a week, and shortly thereafter the business was turned over to her by Wheeler, and she cleared about $100 a month net until the end of 1937.

All these earnings, together with the sums realized from insurance policies which she had carried on each of the three children, and the cash gifts from her husband and her father, who gave her $100 each Christmas for eleven years until his death in 1931, and gifts of $50 to $100 each time he visited her during the year, as well as the contributions appellant received from her son, Tom, while he was working and living at home, were used by appellant for paying current family and household expenses, or were made available to her husband for making payments on the mortgage or taxes, or for expenditures for maintenance of the house. Both the son and daughter testified to these circumstances and to the fact that appellant was not a woman who received gifts of luxuries, but usually money, which she devoted to the family needs rather than for her own benefit. There was further evidence from a disinterested witness that Cross stated before witnesses during the Christmas holiday of 1935 that if it had not been for "Mama," meaning Mrs. Lorene Cross, he would have lost the house.

Appellant and Cross were separated in 1947, a few years after their son was killed in action at Bougainville.

The court granted appellant a divorce pursuant to her counterclaim on January 7, 1948, but as hereinbefore noted, that decree reserved for future determination the questions of alimony and property settlement, and allowed a temporary alimony at $30 a week based upon Charles Cross's earning of $6000 a year at that time. Shortly thereafter, on July 20, 1948, Cross married the appellee, Eleanor Cross, to whom he willed all his property as his sole legatee and devisee. He died on December 18, 1949, and his second wife has received the sum of $3600 from insurance policies.

After the death of Charles Cross, appellant filed a supplemental countercomplaint alleging the remarriage and death of her ex-husband, the terms of his will, her own employment, income and contributions toward the mortgage, taxes and expenses of the household during the years she was married to her husband, and her expenditures on the property made after the separation and divorce. The supplemental pleading asked that Eleanor Cross, individually and as executrix, be made a party to the action; that appellant be awarded the house in which she has been continuously living, title to which was in her deceased ex-husband; a portion of his personal property; alimony, and attorney fees. The court sustained only that portion of the supplemental complaint relating to her interest in the personal property and real estate, and rejected an amendment relating to a claim for dower, and an amendment seeking alimony in gross under section 18 of the Divorce Act. The court refused to admit all evidence on the issue of appellant's equitable ownership of the property, and then sustained a motion to dismiss the entire supplemental proceeding.

On a direct appeal from this decree, this court reversed and remanded the cause, directing the trial court to hear evidence on the issue of adjusting her alleged equities in the property, which she had pleaded in the original divorce action and in the supplemental complaint. (*Cross* v. *Cross*,

2 Ill. 2d 104.) The circuit court, after a hearing pursuant to the remanding order, denied appellant any right, title or interest in her deceased ex-husband's estate, either in the nature of dower, homestead, alimony in general or in gross, or an interest based on equitable considerations.

On this appeal appellant contends that she is entitled to recover alimony or alimony in gross, notwithstanding the death of her ex-husband, on the ground that the questions of permanent alimony and property settlement were reserved in the divorce decree; and that the court has the power to convey the real property of the husband to the wife either in lieu of alimony or on account of her equitable interest therein, as well as the power to allow her attorney fees for services rendered in matters raised by a supplemental bill. Appellee, however, maintains that the right to alimony terminated on the death of Charles Cross; that section 18 of the Divorce Act has no application to this case; that appellant failed to show any special equities under section 17 of the Divorce Act and has not established a right to dower, homestead, or attorney fees.

We shall consider first appellant's right to alimony, or alimony in gross, as provided in section 18 of the Divorce Act. (Ill. Rev. Stat. 1953, chap. 40, par. 19.) The courts of this State have consistently held that alimony will not accrue after the death of either party, and that since alimony is essentially an allowance for the support of the beneficiary during the joint lives of the ex-wife and her divorced husband, the duty to make such payments terminates with death, in the absence of special provisions in the decree evidencing an intention to bind the heirs to continue such payments. (*Lennahan* v. *O'Keefe,* 107 Ill. 620; *Cooper* v. *Estate of Cooper,* 350 Ill. App. 37; *Craig* v. *Craig,* 163 Ill. 176.) However, the court does have power to decree that alimony shall be paid after the death of the spouse, and where the decree expressly so provides, it will be enforced and recognized as an agreement of the parties

incorporated in the decree. *Storey* v. *Storey*, 125 Ill. 608; *Gridley* v. *Wood*, 343 Ill. 223.

Appellant argues that in the instant case the provision in the divorce decree, reserving for future determination permanent alimony and property rights, constitutes grounds for binding the estate of her divorced husband. We cannot agree that this reservation, which is common practice in divorce proceedings, evidenced an intention between the parties to bind the heirs to continue alimony payments after death, as construed under the Illinois cases.

In support of her contention, however, appellant has cited certain Michigan cases (*Pingree* v. *Pingree*, 170 Mich. 36, 135 N.W. 923; *Seibly* v. *Ingham*, 105 Mich. 584, 63 N.W. 528,) where the courts held that under the accepted practice of determining first the right to a divorce and reserving the question of alimony for subsequent adjudication, injustice would result if the intervening death of the husband were to terminate the right to alimony, for during that interval the wife would risk losing her distributive share of her ex-husband's estate by virtue of the divorce, and would also be without alimony; hence, an award for permanent alimony was allowed after the death of the divorced husband.

Not only are the Michigan cases expressly predicated upon distinct statutory provisions, but this court cannot agree with the rationale of those decisions. In all cases involving alimony installments there is that same risk that the intervening death of the ex-husband would prejudice the divorced wife in that she is deprived of her distributive share of his estate by virtue of the divorce, and at the same time her alimony payments would be terminated. Hence, there is little justification for applying a different rule in the circumstances of the instant case. Any interpretation that such alimony payments could be authorized or continued after the death of the ex-husband, in the absence of such an express provision in the decree, would not only

be contrary to established precedent in Illinois, but would be at variance with the avowed objective of alimony, which is to continue in a measure the obligation of support that exists only during the lifetime of the parties, and would be confusing this obligation with the matter of dividing the property of the parties. Hence, we cannot sustain appellant's argument that because the right to permanent alimony was reserved for future adjudication in the divorce decree, it could be awarded after the death of her ex-husband.

Appellant contends further that she is entitled to alimony in gross under the provisions of section 18 of the Divorce Act, since installment payments would not be feasible or practical as a result of the intervening death of her ex-husband. This section of the act includes the provision: "The court may order the husband or wife, as the case may be, to pay to the other party such sum of money, or convey to the party such real or personal property, payable or to be conveyed either in gross or by installments as settlement in lieu of alimony, as the court deems equitable." That provision was construed in *Persico* v. *Persico,* 409 Ill. 608, where the court stated, "The plain and unmistakable purpose of the amendment was to authorize a court in a divorce action to compel the conveyance of property from one spouse to the other as a settlement in lieu of alimony. * * * All that is required is that the recipient spouse be entitled to alimony and that the conveyance be equitable."

While this section does not require proof of special equities to warrant conveyance, as under section 17 of the Act *(Persico* v. *Persico,)* nevertheless, it may be properly invoked only where an award of alimony could be entered. In the instant case appellant's right to alimony, as distinguished from her right to property held by her husband but equitably belonging to her, ceased with the death of the husband. Therefore, she cannot rely upon that provision of section 18 of the act, which contemplates the exchange of the right to alimony for a conveyance of prop-

erty or a sum of money, in support of her claim to the real property of her deceased ex-husband.

We do not find, however, that the decision in *Kramp* v. *Kramp,* 2 Ill. App. 2d 17, cited by appellee, is determinative of appellant's rights herein. In that case the court held the death of the divorced father before the support award had been adjudicated, terminated the child's right to support, notwithstanding a reservation in the divorce decree of questions of property rights and child support.

Not only would this court not be bound under the doctrine of *stare decisis* by the decision of an Appellate Court (*Giesecke* v. *Cullerton,* 280 Ill. 510, 515,) but under the view we take of this cause the cases are distinguishable. That case involved the issue of future child support, whereas the instant case involves not merely the right to future alimony, but essentially an incomplete property settlement as of the date of the divorce, whereby property allegedly belonging at least in part to the divorced wife was held in the name of her ex-spouse.

That this issue survived the death of the divorced husband is evident from our previous decision in this case (*Cross* v. *Cross,* 2 Ill. 2d 104,) which remanded the cause for the admission of evidence relating to appellant's equitable interest in the controverted property. Had the issue terminated with the death of Charles Cross, as did the right to alimony, this court would not have remanded the cause for a further hearing. Therefore, it is incumbent upon this court to determine whether appellant established that she had any such equitable rights or interest as to this property under the terms and provisions of section 17 of the Divorce Act. (Ill. Rev. Stat. 1953, chap. 40, par. 18.) This section provides: "Whenever a divorce is granted, if it shall appear to the court that either party holds the title to property equitably belong to the other, the court may compel conveyance thereof to be made to the party entitled to the same, upon such terms as it shall deem equitable." To justify such a conveyance, special circumstances and

equities must be alleged and established. *Insoda* v. *Insoda,* 400 Ill. 596; *Nowogurski* v. *Nowogurski,* 404 Ill. 276.

Thus, courts have reiterated that where a wife has from equitable considerations other and additional interests in her husband's property than such as attach to her status as a wife, such as where her money comes into the hands of her husband and is invested in real estate to which he holds title; or if realty represents joint earnings, work or savings of husband and wife; or if her earnings or savings have gone into his possession and aided him in acquiring the real estate; the court may then properly decree, when dissolving the marriage relation, that the wife shall be vested with title in fee to such realty as will effect an equitable and fair adjustment of the property rights of the parties. *Wesselhoeft* v. *Wesselhoeft,* 369 Ill. 419; *Killebrew* v. *Killebrew,* 398 Ill. 432; *Nowogurski* v. *Nowogurski,* 404 Ill. 276; *Hopkins* v. *Hopkins,* 399 Ill. 160; *Cross* v. *Cross,* 2 Ill. 2d 104.

There is no legal formula for determining whether the wife's financial contribution, earnings, frugality, and good management will be deemed sufficient to warrant a conveyance under section 17 of the Divorce Act of all or part of the property held in the name of the husband, and each case must be adjudged on its particular facts.

As hereinbefore noted, appellant brought to her marriage with Charles Cross in 1920 $800, and all linens, bedding, dishes and silverware used by the family, thereby freeing his income from those expenses so that it could be devoted to savings for the eventual purchase of the property. There is also evidence that she went to work in business at the time the house was purchased, and contributed to the family income all her earnings from over four years of outside work performed while rearing her family of three children and doing all the household chores. In addition, she devoted her monetary gifts, including the substantial Christmas gifts from her father over some

eleven years, to family expenses, all of which enabled her husband to pay off the mortgage and taxes, and maintain the property through the depression years.

Those factors, together with her recognized good management and frugality for 28 years of married life, commended even by her husband before outsiders, and the further fact that she believed, and there is some evidence that Charles Cross so represented, that she and Charles Cross owned the property jointly, establish appellant's special equities in the property so as to warrant a conveyance to her under section 17 of the Divorce Act of her half interest in the premises; (*Nowogurski* v. *Nowogurski,* 404 Ill. 276; *Hopkins* v. *Hopkins,* 399 Ill. 160; *Shekerjian* v. *Shekerjian,* 346 Ill. 101,) particularly where she has continuously resided in the house where she reared her family, and has improved the property even after the divorce and death of her ex-husband, who willed all his property, including his insurance, to his second wife with whom he had lived for less than a year and a half.

With reference to appellant's claim for attorney fees, it is evident that the court has power to allow attorney fees for services rendered in the enforcement of the decree, and for matters presented by supplemental bill to enforce rights omitted from the original bill. (*Riddlesbarger* v. *Riddlesbarger,* 341 Ill. App. 107.) *A fortiori,* where the decree expressly reserves the questions of property rights for future determination, the attorney fees incidental to the adjudication of that issue may be properly allowed.

On the basis of the foregoing analysis it is our opinion that the circuit court erred in denying appellant any right, title or interest in her deceased husband's estate, and the decree is reversed and the cause remanded, with directions to enter a decree in accordance with the determinations of this court.

*Reversed and remanded, with directions.*