MARION J. BOTTIGLIERO, Plaintiff-Appellant, *v.* MICHAEL J. BOTTIGLIERO, Defendant-Appellee.

(Nos. 55257, 55347, cons.;

First District—September 20, 1972.

J. S. Krakauer and Samuel A. LaSusa, both of Chicago, (Dom J. Rizzi, of counsel,) for appellant.

Finne, Whitcup & Fiala, of Chicago, (Edward M. Fiala, of counsel,) for appellee.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from the decree of the Circuit Court of Cook County. At a bench trial the court denied and dismissed the plaintiff's complaint for divorce and sustained the defendant's counterclaim for divorce. The issues for review are whether the granting of the divorce to the defendant and not the plaintiff was against the manifest weight of the evidence, whether the allocation of the plaintiff's interest in the marital property was arbitrary and an abuse of discretion, whether the denial of alimony to the plaintiff was an abuse of discretion, and whether the portion of plaintiff's attorney fees to be paid by the defendant was insufficient and an abuse of discretion.

The parties, Marion J. Bottigliero and Michael J. Bottligliero, were married on September 25, 1966, and the plaintiff-wife left the marital domicile on May 5, 1967, and never returned. She filed a suit for divorce alleging physical cruelty, which the defendant denied in his answer. He also filed a countercomplaint which alleged desertion and amended his answer to include the defense of condonation.

Each party was 36 years old at the time of the marriage, and it was the first marriage for each. The decree barred alimony and ordered the husband to pay the wife the sum of $3600 to satisfy her equity in the marital property acquired during coveture. The court also ordered the husband to pay $1000 of his wife's attorney fees which amounted to $4597.20 for her second attorney. The court disallowed the petition of the first attorney asking to be paid a balance of $1591.25 after being paid a $150 retainer by the plaintiff and $250 by the defendant pursuant to court order for temporary fees.

The plaintiff first contends the court erred in refusing to grant her a divorce and in granting the defendant's counterclaim. She alleges the defendant was guilty of several unsubstantiated acts of physical cruelty. She stated the defendant struck her on their honeymoon, on December 13, 1966, and on April 24, 1967. None of the incidents took place in the presence of a third party, and she told no one about them until after May 10, 1967. The defendant denied striking her and amended his answer alleging condonation in that she had continued to have sexual relations after the alleged incidents. She admitted this but alleged that he threatened her life.

Despite these allegations she stated she left the marital domicile solely because there was no operative telephone in the apartment. She testified she awoke on the morning of May 5, 1967, and noticed she was hemorrhaging. She was pregnant and was afraid she might lose the baby. Because there was no telephone in the apartment, she walked to the corner drugstore and telephoned a doctor, who told her to lie in bed and to notify him if there was any more bleeding. She phoned her husband at work and asked him if she could stay with her mother so that she would be near a telephone. He at first refused but then consented to her visiting her mother for one week. She returned to the apartment, gathered a few essentials, and then took a cab to her mother's house.

The defendant visited his wife on the evening of the 5th, on the 6th, 7th, 8th and 10th. The first four of these visits were entirely amicable, but on the 10th they had an argument and they did not see or speak to each other again until October 24, 1967.

The defendant testified he had tried to see his wife and call her on the telephone but her mother thwarted his attempts. He also said he wrote her numerous letters and engaged various relatives and professional services to intercede for him. The plaintiff gave birth to a baby girl on November 19, 1967, but never told him about it and left instructions at the hospital that only her mother was to see her. The defendant stated he never had seen his daughter even though an order entered April 17, 1968, provided for visitation rights.

■■ In *Lemon v. Lemon* (1958), 14 Ill.2d 15, the court stated the rule for granting a divorce on the grounds of desertion:

> "Section 1 of the Divorce Act (Ill. Rev. Stat. (1955) chap. 40, par. 1) provides that a divorce based upon desertion may be granted where either party 'has wilfully deserted or absented himself or herself from the husband or wife, without any reasonable cause, for the space of one year', * * *. However, the statute contemplates much more than the mere separation of husband and wife by mutual consent or acquiescence [Citing cases] in that it requires an actual abandonment and abnegation of all marital relationships with an intent not to return and without the legal justification or consent of the other spouse. [Citing cases.]"

■■ In the instant case the testimony of the defendant was that he did not strike his wife, that he did not agree to the separation, and that he tried many times by diverse means to persuade his wife to return to him. If the testimony of the husband is believed, there can be no doubt that the plaintiff abandoned and abnegated all marital relationships with no intent to return to the marital domicile. At a bench trial the credibility of the witnesses is for the court to determine. (*Spicer v. Spicer*

(1958), 19 Ill.App.2d 480.) It is also axiomatic that when a determination of a fact depends upon the weight and credibility to be given to the testimony of witnesses, a reviewing court will not reverse the finding of a trial court unless it is against the manifest weight of the evidence. *Varap v. Varap* (1966), 76 Ill.App.2d 402.

■■■ The plaintiff contends none of the testimony provided by the defendant should be believed because of his testimony about his financial transactions after the separation. There was evidence that someone forged his wife's name on a stock certificate which was in both their names. He also denied having certain accounts and said he could not remember other transactions when the evidence indicated his name did appear on the accounts and that he took part in the transactions. His explanation was that his name appeared on securities and accounts for his mother and uncle and he transacted business for them as a convenience only and was not dealing with his own funds. While some of his testimony is questionable, we cannot say as a matter of law his credibility was destroyed entirely. In a matter such as a contested divorce, where there are no other witnesses and much of the testimony of each is controverted, the evaluation of the trial judge who heard the testimony and saw the witnesses must be accorded great weight.

■■■ The plaintiff next contends the court abused its discretion in awarding her only $3600 as her share of the property acquired during coveture. Again she alludes to various accounts and financial transactions of her husband and asserts she should be awarded a much larger sum. However, she fails to refute the defendant's explanation that the various monies belonged not to him but to his mother and uncle. The award of the court took into consideration the money accumulated by the parties during the marriage as well as the value of five U.S. Savings Bonds belonging to her, which the defendant cashed. Throughout the testimony there was never any proof the defendant was the legal owner of any of the assets claimed by the wife. She was entitled to a share only in the assets accumulated during the marriage, which lasted a little over seven months. It is not manifest that the award of $3600 was an abuse of discretion.

■■■ The plaintiff also contends it was error for the trial court to deny her permanent alimony. She had received temporary alimony of $300 per month from March 28, 1968, until the date of the trial, February 24, 1970. The general rule is that when a divorce is awarded to the husband on the fault of his wife, she will not be awarded permanent alimony. (*Fox v. Fox* (1956), 9 Ill.2d 509.) However, the court at its discretion may grant alimony to an errant wife if the circumstances warrant it. (*Boylan v. Boylan* (1932), 349 Ill. 471.) In the present case the wife

has assets of about $10,000 and a pension fund accumulating interest which resulted from being a federal employee for 15 years. No hardship was alleged by her and no testimony to that effect was adduced at trial. She is obviously capable of making her own living, having done so for 15 years prior to her marriage. It should also be noted the marriage was a short one, lasting only a little over seven months.

■■■■ Finally, the plaintiff contends the court abused its discretion because the decree provided that the defendant pay only $1000 of her attorney fees. It is well settled that the wife is primarily responsible for her own attorney fees, and the court may exercise discretion to make allowance for the conditions and circumstances of the case. (*Jones v. Jones* (1964), 48 Ill.App.2d 232.) Attorney fees may be allowed to the party at fault when the court finds that party is financially unable to pay the fees whereas the other party is able to do so. (*Ganzer v. Ganzer* (1969), 110 Ill.App.2d 394.) In the present case the plaintiff has sufficient assets to pay the fees, and a review of the record indicates the court did not abuse its discretion by ordering the defendant to pay a total of $1000 of those fees.

For the above reasons, the decree of the Circuit Court of Cook County is affirmed.

Decree affirmed.

BURMAN and ADESKO, JJ., concur.