ANNA HARAMBASIC, Plaintiff and Counterdefendant-Appellee, *v.* FRANK HARAMBASIC, Defendant and Counterplaintiff-Appellant.

First District (3rd Division)    No. 76-461

Opinion filed December 14, 1977.

Mary C. Perisin, of Chicago (Arthur George, of counsel), for appellant.

Gregory P. Guth, of Chicago, for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

This appeal arises from a dispute over the disposition of jointly held property following a default divorce. The action for divorce was instituted by the plaintiff and counterdefendant, Anna Harambasic, on the ground of extreme and repeated mental cruelty. The defendant and counterplaintiff, Frank Harambasic, filed an answer and a counterclaim for divorce on the ground of desertion. By stipulation of the parties, the cause was heard on Frank's counterclaim of desertion as a default matter. An order was entered dismissing Anna's amended complaint, and the divorce was granted on the counterclaim. Although the parties agreed that the divorce be heard as a default, the court heard testimony from both parties regarding property matters. This appeal is from those portions of the decree and the amended decree for divorce relating to the disposition of real estate held in joint tenancy and the accounting provided for the rental income collected from these parcels.

The relevant facts are as follows:

Anna and Frank Harambasic were married on December 28, 1954, in Yugoslavia, where they lived for 15 years before immigrating to the United States. Three children were born to the couple. During the time they lived in Yugoslavia, Anna was gainfully employed outside of the home. In May 1969 they moved to the United States, where they resided with Anna's parents. Within 10 days of their arrival in the United States, Anna secured employment and both parties have been gainfully employed since, with Anna sometimes holding two jobs concurrently. Because the couple was living with Anna's parents, she was able to put her earnings in a separate savings account in her name. Much of Frank's earnings was also banked.

In February 1971 the parties purchased a parcel of real estate located at 2318 North Southport Avenue, Chicago, Illinois, for $30,000. Anna contributed $7,000 from her savings account; Frank contributed $4,000 to $5,000; a friend of the plaintiff's father loaned the couple $5,000; and Anna's father furnished the balance of approximately $12,000 to $15,000. Title was taken by Anna and Frank as joint tenants.

In 1972, Anna and Frank bought another parcel of real estate located at 1900-1906 West Foster Avenue in Chicago, (sometimes referred to by the parties as 1902-1906 West Foster Avenue) for a purchase price of $88,000. To finance this purchase, the parties put up the Southport property (the mortgage for which had been paid by this time) plus contributions of

$7,000 from Anna, $4,000 from Frank and approximately $8,000 from Anna's father. At all times relevant to this appeal, part of the Foster Avenue property was used as the marital domicile. Title to this property was also taken in joint tenancy. While testimony regarding the money from Anna's father is somewhat confused, the approximately $20,000 from both purchases was apparently in the form of a loan. There was a common mortgage on both parcels of real estate in the amount of $72,000. The parties also owned a restaurant which was sold for a net profit of $4,000. Half of the proceeds was spent on repairs to the other property owned by the parties, while Frank kept the remaining $2,000.

In May 1975 Anna instituted the divorce proceedings and on December 16, 1975, the court determined the property matters as follows: that Frank was directed to convey to Anna the property on Foster Avenue and would be responsible for one-fourth of the common mortgage outstanding on the properties; that Anna convey her title to the Southport Avenue property to Frank, and be responsible for three-fourths of the outstanding mortgage; that Frank receive the income from the Southport Avenue property beginning December 1, and Anna the income from the Foster Avenue property beginning December 1; that the parties split an Internal Revenue refund and the profits from the sale of the restaurant; and that as to monies from rent each had collected and spent for necessities (approximately $10,410 collected by Frank from May-December 1975 and approximately $6,535 collected by Anna from January-May 1975) were off-setting, and no further accounting would be required; that Anna was to waive alimony; and that Anna would be responsible for any obligation to her father for his contributions for their real estate purchases.

The divorce decree itself, issued December 23, 1975, *nunc pro tunc* December 9, incorporated the preceding findings of the court, but omitted any reference to the waiver of alimony or the debt to Anna's father. In addition, Frank was ordered to pay $430 for rent collected for the month of December on the Foster Avenue property, pursuant to an accounting. The court retained jurisdiction until all the provisions of the decree had been performed.

On January 6, 1976, on motion of Anna, an order was entered amending paragraphs G and H of the decree (those ordering the conveyance of the Southport property by Anna to Frank, and the Foster property by Frank to Anna) to begin with the words "That in lieu of alimony." At that same time, Frank filed a post-trial motion to modify the decree, and for a resubmission for determination of an equitable division of property rights, alleging that the division of the property held in joint tenancy by the parties was inequitable, that the real estate should have been sold, the mortgage paid, and the balance divided between the parties and that

failure to do so was an abuse of discretion, and that Anna had failed to allege any special equities or proof thereof against the real estate held in joint tenancy.

On March 15, 1976, Anna filed a motion for leave to amend her answer to Frank's counterclaim, claiming special equities in the jointly held real estate, based on testimony presented at trial regarding the amount of her earnings used to pay marital obligations during the marriage, the amount of her earnings used in the purchase of the real estate, and the amount of money contributed by her father toward the purchase of that real estate. Anna also filed a motion to amend the decree by adding the following paragraph:

> "That the Plaintiff and Counter-Defendant, ANNA HARAMBASIC, shall indemnify and hold harmless the Defendant and Counter-Plaintiff, FRANK HARAMBASIC, from any payments due to ANNA HARAMBASIC's father for moneys advanced for the purchase of the real estate commonly known as 1902-06 West Foster Avenue, Chicago, Illinois, and 2318 North Southport Avenue, Chicago, Illinois"

and a petition for rule to show cause why Frank should not be held in contempt for failing to comply with the provisions of the divorce decree, to which Frank filed his objection since his post-trial motion was still pending before the court.

On April 5, 1976, the court entered an order, *nunc pro tunc* March 17, 1976, denying Frank's post-trial answer, granting her motion to amend the decree, and allowing Frank to set bond for an appeal.

Frank contends that the distribution of property under the divorce decree was improper where Anna failed to specifically plead special equities, and where she was also the erring party and so not entitled to alimony.

The decree itself is unclear as to the basis for the distribution of property here. Section 17 of the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 18) provides:

> "Whenever a divorce is granted, if it shall appear to the court that either party holds the title to property equitably belonging to the other, the court may compel conveyance thereof to be made to the party entitled to the same, upon such terms as it shall deem equitable."

Under section 17, a party must prove the existence of "special equities" before a court will order such a conveyance:

> "* * * While courts in divorce actions are thus empowered to determine the property rights of the parties solely upon the basis of equitable ownership and regardless of fault in the dissolution of the marriage, special circumstances and existing equities sufficient to

justify the conveyance are required to be alleged in the complaint and established by the evidence. (*Insoda v. Insoda*, 400 Ill. 596; *Podgornik v. Podgornik*, 392 Ill. 124.) Relief cannot be granted where there are no allegations of equities or special circumstances in the complaint." (*Persico v. Persico* (1951), 409 Ill. 608, 610, 100 N.E.2d 904.)

However, in *Gerhardt v. Gerhardt* (1974), 18 Ill. App. 3d 658, 662-63, 310 N.E.2d 224, the court held that the issue of special equities had been sufficiently put in issue, although it was never specifically pleaded. There the defendant's answer admitted joint ownership of an auto and truck, alleged that the plaintiff had possession and control of $40,000 in checking and savings accounts which was accumulated through the joint efforts of the parties and asked the court to determine the respective interests of the parties in the assets described in the complaint, and further alleged in an amendment to the answer that she had been gainfully employed throughout the marriage, that her earnings were greater than the plaintiff's, that her earnings were devoted to the common purpose of the parties, and that part of the plaintiff's interests in assets described in the complaint were acquired with her earnings.

■■ In the instant case, Anna offered evidence without objection relating to her employment throughout the marriage, the amounts of money she individually contributed towards the purchase of real estate held jointly by the parties, and the money contributed by her father towards those purchases. Where a wife by her own industry, earnings, labor, economy and frugality has added to the financial settlement of the parties, she has an equitable interest which must be recognized by a fair division of property. *Ylonen v. Ylonen* (1954), 2 Ill. 2d 111, 117 N.E.2d 98.

■■ The record in the instant case discloses that the property involved was accumulated through efforts of both parties. Frank failed to object to the proof of special equities offered by Anna at trial, and Anna was subsequently allowed to amend her pleadings to conform to that proof under section 46(3) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 46(3)). We find, therefore, that the court acted within its sound discretion in ordering that the property be distributed as it did, effecting an equitable and fair adjustment of the property rights of the parties.

In addition, section 18 of the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 19) states:

"When a divorce is decreed, the court may make such order touching the alimony and maintenance of the wife or husband * * * as, from the circumstances of the parties and the nature of the case, shall be fit, reasonable and just * * *. The court may order the husband or wife, as the case may be, to pay to the other

party such sum of money, or convey to the party such real or personal property, payable or to be conveyed either in gross or by installments as settlement in lieu of alimony, as the court deems equitable."

Under this section, all that is required is that the recipient spouse be entitled to alimony and that the conveyance be equitable. *Persico v. Persico* (1951), 409 Ill. 608, 100 N.E.2d 904; *Cross v. Cross* (1955), 5 Ill. 2d 456, 125 N.E.2d 488; *Yoselle v. Yoselle* (1964), 54 Ill. App. 2d 354, 204 N.E.2d 129.

■■■ "Alimony is not a prize to be awarded the winner of the divorce contest." (*Fox v. Fox* (1970), 129 Ill. App. 2d 209, 215, 262 N.E.2d 607.) Rather the court, in its discretion, will determine what is fit, reasonable, just and equitable. (*Fox*, at 215.) Since the statute does not refer to nor make an award dependent upon the question of fault, the court is empowered to award alimony to a wife against whom a divorce is granted. (*Pohren v. Pohren* (1973), 13 Ill. App. 3d 380, 384, 300 N.E.2d 288.) While formerly an erring wife was considered ineligible for alimony, Illinois courts now will weigh all facts and circumstances in any given case to determine the propriety of awarding alimony. (See *Gold v. Gold* (1974), 17 Ill. App. 3d 11, 308 N.E.2d 75; *Bottigliero v. Bottigliero* (1972), 7 Ill. App. 3d 907, 289 N.E.2d 85.) In the case at bar, the evidence supporting any allegation of Anna's misconduct is scant and minimal. It was upon the stipulation of the parties that the cause was heard as a default matter on Frank's counterclaim. There is nothing in the record to suggest that the fault of Anna was so gross that there was an abuse of discretion in determining that she would be entitled to alimony. *Bernardini v. Bernardini* (1970), 130 Ill. App. 2d 692, 694, 264 N.E.2d 295.

■■ Both the form for an award of alimony, whether it be periodic or in gross, and its amount rest primarily in the sound discretion of the court. (*Knox v. Knox* (1975), 31 Ill. App. 3d 816, 822, 334 N.E.2d 891.) An award of alimony in gross is proper where circumstances indicate that periodic alimony would not be feasible (*Dmitroca v. Dmitroca* (1967), 79 Ill. App. 2d 220, 223 N.E.2d 545), such as where an award of alimony in gross will lead to a final settlement between the parties and eliminate financial bickering and ill-will. *Musgrave v. Musgrave* (1976), 38 Ill. App. 3d 532, 347 N.E.2d 831.

■■ In the instant case, in substance an award of alimony in gross was granted in lieu of alimony. The court stated in its order that Anna was to waive alimony and hold Frank harmless from any claim that her father might make against them for the $20,000 he contributed toward their purchases of real estate. The divorce decree itself was amended to include the fact that the conveyances of the Foster Avenue and Southport

Avenue properties were "in lieu of alimony." In view of evidence of Frank's arrearages in his child support payments and his apparent frequent intoxication, the settlement arrived at by the trial court appears to have been in the best interest of the parties, and was a proper exercise of that court's discretion.

■■ Similarly, we find Frank's claim that the decision of the court that the rents collected by the parties prior to and during the pendency of the divorce proceedings were off-setting was "most inequitable and arbitrary" to be without merit.

For the foregoing reasons, the decree is affirmed.

Affirmed.

SIMON, P. J., and McNAMARA, J., concur.