2022 IL App (1st) 210711

No. 1-21-0711

Opinion filed July 12, 2022

SECOND DIVISION

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | |
| | ) | Appeal from the |
| STEFANIE A. SCARP, | ) | Circuit Court of |
| | ) | Cook County |
| Petitioner-Appellee, | ) | |
| | ) | No. 15 D 86 |
| and | ) | |
| | ) | The Honorable |
| JEFFREY D. RAHMAN, | ) | Diana Rosario, |
| | ) | Judge Presiding. |
| Respondent-Appellant. | ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.
Justices Howse and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1     The respondent, Jeffrey D. Rahman, appeals from the trial court's order denying an amended petition by him to modify the monthly maintenance obligation he pays to the petitioner, Stefanie A. Scarp. The basis of the trial court's order was its conclusion that the parties' marital settlement agreement (MSA) does not allow for the modification of maintenance, and Jeffrey's argument on appeal is that the trial court erred in this conclusion. For the following reasons, we affirm.

¶ 2                                   I. BACKGROUND

¶ 3 Stefanie and Jeffrey were married in 1998, and three children were born to the marriage. On March 22, 2017, a judgment for dissolution of marriage was entered, which incorporated the parties' MSA of February 27, 2017. Section 3.01 of that MSA provided for payments by Jeffrey to Stefanie for the support of the parties' three minor children until each reached majority. Additionally, section 7.2 provided for Jeffrey to pay maintenance of $2550 per month from the date that the judgment for dissolution of marriage was entered and continuing for 163 months or until Stefanie's remarriage, her cohabitation in excess of 6 months, or the death of either party. Section 7.4 stated that these maintenance payments were "predicated upon" each party's respective represented gross income in 2015, which was $150,000 for Jeffrey and $55,000 for Stefanie. Section 7.5 provided for the parties to exchange income tax returns during the 163 months of maintenance. Section 14.11 of the MSA is the provision most pertinent to this appeal, and it stated:

> "14.11 Except for the terms herein concerning the support, custody or visitation of the minor children, *this Agreement shall not be changed, modified or altered by any order of Court* after this Agreement has been incorporated into a Judgment for Dissolution of Marriage, or after it has become effective by the entry of any Judgment for Dissolution of Marriage, *except by mutual consent of the parties*." (Emphases added.)

Finally, section 14.17 provided that parties may only amend or modify the MSA by a written agreement dated and signed by them and that no oral agreement shall be effective to do so.

¶ 4 On June 10, 2020, Jeffrey filed an initial petition that sought, in pertinent part, an order terminating his maintenance payments to Stefanie. The basis upon which Jeffrey sought to terminate maintenance was that, in 2018, Stefanie had earned $164,124, whereas he had earned only $110,000. He also alleged that Stefanie had earned more income in 2019 and 2020. Stefanie moved to strike and dismiss this part of Jeffrey's petition, on the grounds that she had not agreed

to terminate maintenance and none of the events or occurrences that would warrant a termination of maintenance, as set forth in section 7.2 of the MSA, had occurred or existed at that time. The trial court granted Stefanie's motion to strike and dismiss without prejudice and allowed Jeffrey leave to refile an amended petition.

¶ 5        On December 17, 2020, Jeffrey filed the amended petition to modify support and other relief that is the subject of this appeal. The allegations of that amended petition were materially the same as his initial petition, but the prayer for relief was modified to request an order either terminating Jeffrey's maintenance payments or alternatively modifying his maintenance obligation to $0.

¶ 6        Stefanie filed a response to the amended petition, and the matter proceeded to an evidentiary hearing. The testimony given at the hearing mostly concerned the wage and business income of the two parties in 2019 and 2020. In general, Jeffrey testified that he works as a creative designer. In 2019, he reported income of $111,619. He specifically reported $35,000 in wage income from Dicot Design, a company he owns with his wife Allison, along with $55,400 in wage income from TPN Holdings. In 2020, he reported income of $122,120.45 received from four sources, including $17,500 from Dicot Design. He testified that he and Allison were winding down Dicot Design and thus he will not receive income from this company in the future. Stefanie testified to reported income of $164,275 in 2018 and $170,614 in 2019, including maintenance received from Jeffrey. She had not received her 2020 tax return as of the time of the evidentiary hearing.

¶ 7        At the conclusion of the hearing, the parties submitted written closing arguments. These are not included in the record on appeal, although the trial court's written order indicates some of what the parties argued. In pertinent part, that order by the trial court denied Jeffrey's request for modification of maintenance. The trial court concluded that section 14.11 of the MSA constituted an agreement by the parties that Jeffrey's maintenance obligation was nonmodifiable. It also

rejected Jeffrey's argument that " 'support,' " as used in section 14.11, included maintenance. It further characterized section 14.11 as having "clear terms" that were not overcome by the statement in section 7.4 that the maintenance payments were " 'predicated upon' " certain incomes or by the requirement in section 7.5 that the parties exchange income tax returns for the duration of the maintenance award. Thereafter, Jeffrey filed a timely notice of appeal of that order.

¶ 8                                                    II. ANALYSIS

¶ 9         The issue in this case is whether the parties' agreement in section 14.11 of their MSA that "this Agreement shall not be changed, modified or altered by any order of court *** except by mutual consent of the parties" is sufficient to make maintenance nonmodifiable or whether they were required by statute to expressly state an agreement on the topic of maintenance in order to make it nonmodifiable. The statute at issue is section 502(f) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/502(f) (West 2016)), which pertains to the modifiability of certain terms commonly addressed in MSAs. That statute was amended twice during the parties' divorce proceedings. See Pub. Act 99-90, § 5-15 (eff. Jan. 1, 2016) (amending 750 ILCS 5/502(f)); Pub. Act 99-763, § 5 (eff. Jan. 1, 2017) (amending 750 ILCS 5/502(f)).[1] The current version of that statute, which was effective as of the time the parties entered into their MSA and the trial court entered the judgment for dissolution of marriage, provides:

> "Child support, support of children as provided in Sections 513 and 513.5 after the children attain majority, and parental responsibility allocation of children may be modified upon a showing of a substantial change in circumstances. *The parties may provide that maintenance is non-modifiable in amount, duration, or both. If the parties do not provide*

---

[1]Only the amendments made by Public Act 99-90 (eff. Jan. 1, 2016) are truly pertinent to this appeal. The only change made to section 502(f) by Public Act 99-763 (eff. Jan. 1, 2017) was the addition of the reference to section 513.5 of the Act to the first sentence.

> *that maintenance is non-modifiable in amount, duration, or both, then those terms are modifiable upon a substantial change of circumstances.* Property provisions of an agreement are never modifiable. The judgment may expressly preclude or limit modification of other terms set forth in the judgment if the agreement so provides. Otherwise, terms of an agreement set forth in the judgment are automatically modified by modification of the judgment." (Emphasis added.) 750 ILCS 5/502(f) (West 2016).

¶ 10      Relying on the statutory language emphasized above, Jeffrey argues that section 502(f) "shows how clear the parties' intent to preclude modification must be." He argues that, in the parties' MSA, there is no clear intent to preclude the modification of maintenance and therefore the trial court should have found that the MSA unambiguously allowed for maintenance to be modified. He also advances several additional arguments that the trial court's interpretation of the MSA was flawed.

¶ 11      Jeffrey's argument raises issues of both contract interpretation and statutory interpretation. These are questions of law, and the standard of review is *de novo*. *In re Marriage of Dynako*, 2021 IL 126835, ¶¶ 14-15. Usual principles of contract interpretation apply to MSAs. *Id.* ¶ 15. The court thus ascertains the parties' intent from the plain language of the MSA itself. *Id.* When the terms of an MSA are unambiguous, they must be given their plain and ordinary meaning. *In re Marriage of Dundas*, 355 Ill. App. 3d 423, 426 (2005). With statutory interpretation, the fundamental rule is to ascertain and give effect to the legislature's intent. *Dynako*, 2021 IL 126835, ¶ 14. The plain language of the statute is the best indication of that intent. *Id.* When statutory language is clear and unambiguous, a court may not depart from the plain language and meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express. *Id.*

¶ 12      In ascertaining the contractual intent of the parties, we begin by observing, as the trial court

also did, that the language used by the parties in section 14.11 of their MSA reflects the statutory language of section 502(f) of the Act as it existed prior to January 1, 2016. See 750 ILCS 5/502(f) (West 2014). At that time, section 502(f) stated:

> "Except for terms concerning the support, custody or visitation of children, the judgment may expressly preclude or limit modification of terms set forth in the judgment if the agreement so provides. Otherwise, terms of an agreement set forth in the judgment are automatically modified by modification of the judgment." *Id.*

Section 14.11 of the parties' MSA is clearly patterned upon the first sentence of this statute. Section 14.11 states in pertinent part, "Except for the terms herein concerning the support, custody or visitation of the minor children, this Agreement shall not be changed, modified or altered by any order of Court *** except by mutual consent of the parties."

¶ 13    Illinois cases applying the pre-2016 version of section 502(f) have held that similar "catchall" provisions to the effect that an entire MSA "shall not be modifiable" constituted a sufficient agreement by the parties that maintenance obligations were nonmodifiable. The case relied upon by Stefanie here is *In re Marriage of Schweitzer*, 289 Ill. App. 3d 425 (1997). There, the parties had entered into an MSA providing that the husband would pay $1500 per month in maintenance. *Id.* at 426. A separate article provided that " '[t]his Marital Settlement Agreement shall not be modifiable.' " *Id.* at 427. Six years later, the husband petitioned to modify the judgment to reduce his maintenance obligation on the basis of a change in the parties' incomes. *Id.* The trial court denied the petition, ruling that the husband's maintenance obligation was nonmodifiable under the provision that the MSA " 'shall not be modifiable.' " *Id.* The appellate court affirmed. It reasoned that "[t]he purpose of allowing parties to agree in advance to the circumstances under which maintenance may be modified or terminated is to permit them to plan for the future by eliminating

concerns based upon subsequent motions to increase or decrease their obligations." *Id.* at 428. It also stated that "[t]he intent of the parties to preclude or limit modification of maintenance must be clearly manifested in their agreement." *Id.* Ultimately, the court found the provision at issue to be a clear statement that the entire MSA was nonmodifiable, that its language was not ambiguous, and that it was "sufficient to express the parties' intention that the maintenance provisions of the Agreement are not to be modified." *Id.* at 429.

¶ 14        The court in *Schweitzer* also relied upon this court's decision of *In re Marriage of Mateja*, 183 Ill. App. 3d 759 (1989). In *Mateja*, the parties' MSA provided that the husband would pay certain maintenance while the parties' child was a minor, after which time he would pay a lower amount until the wife remarried. *Id.* at 761. It also provided that the wife was permitted to earn $13,000 in annual income before her earnings would have an effect upon the husband's maintenance obligations. *Id.* And it stated, " 'The parties further agree that the terms of the Agreement shall be non-modifiable.' " *Id.* Several years later, the husband filed a petition to terminate maintenance. *Id.* At an evidentiary hearing, the wife testified as to her earnings, which were below $13,000. *Id.* The trial court denied the petition to terminate maintenance, finding that the parties intended their agreement to be nonmodifiable unless the wife earned over $13,000, remarried, or died. *Id.* This court affirmed. This court held that no ambiguity existed in the contractual language that the entire MSA was nonmodifiable unless, as specifically provided, the wife earns over $13,000, remarries, or dies. *Id.* at 762.

¶ 15        Here, we similarly conclude that the parties' catchall agreement in section 14.11 that, except for terms concerning support, custody, or visitation of the minor children, "this Agreement shall not be changed, modified or altered by any order of Court *** except by mutual consent of the parties" is a clear and unambiguous statement that the entire MSA was nonmodifiable, except for

the terms concerning support, custody, or visitation or where the parties mutually consent. The plain language of this agreement that the entire MSA shall not be modified indicates a contractual intent to make maintenance nonmodifiable in its entirety.

¶ 16     We are not persuaded by Jeffrey's arguments that other provisions of the parties' MSA show a contrary intent. He argues that interpreting the MSA to make maintenance nonmodifiable would nullify or render meaningless section 7.4, which states that maintenance payments were "predicated upon" Jeffrey's income of $150,000 in 2015 and Stefanie's income of $55,000, and section 7.5 requiring the parties to exchange tax returns for the duration of the maintenance obligation. Courts will not interpret a contract in a manner that nullifies or renders contractual provisions meaningless. *Thompson v. Gordon*, 241 Ill. 2d 428, 442 (2011). Neither of these two provisions expressly addresses modification of maintenance. We do not know exactly why the parties included these two provisions in their MSA, but section 7.4 appears to simply set forth the basis for their agreement that Jeffrey would pay maintenance and the amount he would pay. Also, we can envision a number of reasons that divorcing parties could agree to an exchange of their respective tax returns in the years following their divorce apart from enabling a motion to modify maintenance. Accordingly, neither of these provisions is nullified or rendered meaningless by an interpretation that the MSA makes maintenance nonmodifiable.

¶ 17     Jeffrey also relies upon the principle that courts interpret contracts reasonably to avoid absurd results. See *Suburban Auto Rebuilders, Inc. v. Associated Tile Dealers Warehouse, Inc.*, 388 Ill. App. 3d 81, 92 (2009). He argues that the trial court's interpretation of the MSA has led to an absurd result because Stefanie now makes more income than Jeffrey. We reject the argument that the result reached by the trial court is absurd. Nothing about the parties' current incomes justifies a departure from the plain language of their agreement in the MSA.

¶ 18 Jeffrey makes a rather vague argument that the word "support" as used in section 14.11 of the MSA includes maintenance. He cites the definition of "[o]rder for support" in section 15 of the Income Withholding for Support Act (750 ILCS 28/15(a) (West 2016)), a statute that has no application in this case. We reject this argument also. It is clear from the plain language of section 14.11 and the statute that it is modeled upon, section 502(f) of the Act (750 ILCS 5/502(f) (West 2014)), that the word "support" means child support. It does not include maintenance.

¶ 19 Finally, Jeffrey argues that the trial could should have determined that the agreement was ambiguous and taken evidence as to the parties' intent. As discussed above, we find that section 14.11 includes a clear and unambiguous agreement indicating a contractual intent to make maintenance nonmodifiable in its entirety. Accordingly, we reject Jeffrey's argument concerning contractual ambiguity or the need for an evidentiary hearing.

¶ 20 In this case, however, our conclusion on contractual interpretation does not end our analysis. Jeffrey's argument raises the question of whether the parties' catchall agreement in section 14.11 was nevertheless insufficient to make maintenance nonmodifiable under the postamendment version of section 502(f) of the Act (750 ILCS 5/502(f) (West 2016)). As stated above, the language used by the parties in section 14.11 is patterned on section 502(f) of the Act as it existed prior to amendment (750 ILCS 5/502(f) (West 2014)). When the legislature amended section 502(f), effective in 2016, it set forth with greater specificity which terms commonly addressed in MSAs could be made modifiable or nonmodifiable. Pertinent to the issue before us in this case, the legislature added two sentences pertaining to the modifiability of maintenance: "The parties may provide that maintenance is non-modifiable in amount, duration, or both. If the parties do not provide that maintenance is non-modifiable in amount, duration, or both, then those terms are

modifiable upon a substantial change of circumstances." 750 ILCS 5/502(f) (West 2016).[2]

¶ 21  Jeffrey urges us to compare the language used in section 14.11 of the parties' MSA with the language of the MSA at issue in *Dynako*, 2021 IL 126835, in which the supreme court addressed whether language used in the parties' MSA was sufficient to make maintenance nonmodifiable under the postamendment version of section 502(f). In *Dynako*, the MSA provided that the husband would pay maintenance to the wife in gradually decreasing amounts over an eight-year period and that " '[s]aid maintenance payments shall be nonmodifiable pursuant to Section 502(f) of the [Act].' " (Emphasis omitted.) *Id.* ¶ 4. On appeal to the supreme court of the denial of the husband's petition to modify maintenance, the husband argued that the language used by the parties in their MSA was insufficient to make maintenance nonmodifiable. *Id.* ¶ 12. He argued that the plain language of section 502(f) required that, if parties wish to make maintenance nonmodifiable, they must state that it is nonmodifiable in "amount, duration, or both" and, if they do not do so, this results in maintenance being modifiable. *Id.* ¶ 18. The supreme court rejected this argument, finding no support for it in the language of section 502(f). *Id.* ¶ 19. It reasoned that section 502(f) "allows parties to make maintenance entirely nonmodifiable or to select a single aspect of the obligation to make nonmodifiable." *Id.* "If a party to the dissolution does not agree that maintenance is nonmodifiable, either in whole or in part, then maintenance may be modified upon a showing of a substantial change of circumstances." *Id.*

¶ 22  The fact that the MSA in *Dynako* expressly addressed the topic of the modifiability of

---

[2]We note that the word "other" was also added to the statutory provision that, under the preamendment version of section 502(f), authorized the kinds of catchall provisions that were interpreted as agreements to make maintenance nonmodifiable. Thus, that provision of the statute now states: "The judgment may expressly preclude or limit modification of *other* terms set forth in the judgment if the agreement so provides. Otherwise, terms of an agreement set forth in the judgment are automatically modified by modification of the judgment." (Emphasis added.) 750 ILCS 5/502(f) (West 2016). Jeffrey makes no argument that the addition of the word "other" has any relevance to the issue before us, and consequently we do not address this issue either.

maintenance distinguishes it from this case, in which maintenance is only implicitly encompassed within a catchall provision that "this Agreement shall not be changed, modified or altered by any order of Court *** except by mutual consent of the parties." However, we find *Dynako* significant for the fact that the supreme court rejected the argument that the postamendment version of section 502(f) required an express statement in the MSA about whether maintenance was nonmodifiable as to "amount, duration, or both," the absence of which resulted in maintenance being modifiable. In other words, the supreme court interpreted these provisions of section 502(f) as setting forth the nature of the agreements the parties could reach concerning the modifiability of the aspects of maintenance and the effect of not articulating any agreement, as opposed to interpreting these provisions as mandating the use of particular language in the MSA.

¶ 23     Guided by this interpretation in *Dynako*, we conclude that the legislative intent of amended section 502(f) is not to require that an MSA include a statement specifically mentioning the topic of maintenance for it to be nonmodifiable. Rather, we interpret section 502(f) as continuing to permit parties to an MSA to employ a catchall provision to the effect that the entire MSA is nonmodifiable (except for terms concerning matters that may never be made nonmodifiable), and where parties employ such a catchall provision, this encompasses an agreement that maintenance is nonmodifiable in its entirety.

¶ 24     First, as discussed above, this is consistent with agreements that parties were historically allowed to make under section 502(f) and the fact that such catchall agreements were interpreted as sufficient to make maintenance nonmodifiable. See *Schweitzer*, 289 Ill. App. 3d at 429. We discern nothing in the plain language of amended section 502(f) that the legislature intended to change this. Second, as the supreme court recognized in *Dynako*, one of the agreements that section 502(f) permits parties to make is an agreement "to make maintenance entirely nonmodifiable."

*Dynako*, 2021 IL 126835, ¶ 19. A catchall agreement that an entire MSA shall not be modified is, in effect, an agreement that maintenance is entirely nonmodifiable. Third, the word "expressly" was used in the preamendment version of section 502(f) and retained in the corresponding sentence of the postamendment version. However, the legislature did not use the word "expressly" in either of the sentences pertaining to the provision of maintenance as nonmodifiable in amount, duration, or both. The omission of the word "expressly" from these sentences leads us to conclude that the legislature was not intending to require parties to an MSA to expressly mention the topic of maintenance in order to make it nonmodifiable. Rather, the nonmodifiability of maintenance can be implicit where parties state in a catchall agreement that an MSA in its entirety shall not be modified.

¶ 25    Accordingly, we conclude that the language used by the parties in their MSA is sufficient to indicate a clear and unambiguous agreement that maintenance is nonmodifiable and that the parties were not required under section 502(f) of the Act to state an agreement specifically on the topic of maintenance in order to make it nonmodifiable. The trial court did not err in its interpretation of the parties' MSA.

¶ 26                                III. CONCLUSION

¶ 27    For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 28    Affirmed.

*In re Marriage of Scarp*, 2022 IL App (1st) 210711

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 15-D-86; the Hon. Diana Rosario, Judge, presiding. |
| **Attorneys for Appellant:** | Paul L. Feinstein, of Paul L. Feinstein, Ltd., and Joshua Beyer, of Dussias Wittenberg Koenigsberger, LLP, both of Chicago, for appellant. |
| **Attorneys for Appellee:** | Matthew D. Elster and Michael J. Levy, of Beermann LLP, of Chicago, for appellee. |