**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230184-U

Order filed January 12, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| *In re* Marriage of: | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| THEODORE JANUSZEWSKI, | ) | Will County, Illinois. |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-23-0184 |
| | ) | Circuit No. 15-D-1303 |
| v. | ) | |
| | ) | The Honorable |
| COLLEEN JANUSZEWSKI, | ) | David Garcia, |
| | ) | Judge, presiding. |
| Respondent-Appellant. | ) | |
| | ) | |

PRESIDING JUSTICE McDADE delivered the judgment of the court.
Justices Brennan and Davenport concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The circuit court's order is reversed and remanded, where the parties' marital settlement agreement precluded the modification of permanent maintenance.

¶ 2     This case arises from dissolution of marriage proceedings between petitioner-appellee, Theodore Januszewski, and respondent-appellant, Colleen Januszewski. Pursuant to a 2016 dissolution judgment, which incorporated the parties' marital settlement agreement, petitioner was ordered to pay respondent a monthly amount for permanent maintenance.

¶ 3   In 2023, petitioner filed a motion to modify or terminate his maintenance obligations, and respondent subsequently filed a complaint for declaratory judgment, arguing that petitioner's maintenance obligations are nonmodifiable pursuant to the marital settlement agreement. The circuit court denied respondent's complaint for declaratory judgment and certified the denial for interlocutory appeal. For the reasons that follow, we reverse and remand for further proceedings.

¶ 4   I. BACKGROUND

¶ 5   The parties were married on May 10, 1981, and had four children during the marriage. On December 29, 2015, petitioner filed a petition for dissolution of marriage in the Circuit Court of the Twelfth Judicial District, Will County. Respondent later filed a counter-petition for dissolution of marriage.

¶ 6   On September 20, 2016, the circuit court entered a dissolution judgment that incorporated a marital settlement agreement ("Agreement") that the parties executed on that same date. The Agreement provides as follows, in pertinent part:

"**ARTICLE II**
**MAINTENANCE**

*****

2.3   HUSBAND shall pay to WIFE pursuant to statutory guidelines as and for permanent maintenance, the fixed sum of $2,742 (twenty seven hundred forty two dollars) per month, commencing on the day of his vacation of the marital residence.

*****

**ARTICLE X**
**NON-MODIFIABILITY**

10.1    HUSBAND and WIFE agree that this Agreement shall not be changed, modified or altered by any order of any Court after this Agreement has been incorporated into a Judgment for Dissolution of Marriage, or after it has become effective by the entry of any Judgment for Dissolution of Marriage.

*****

### ARTICLE XI
### GENERAL PROVISIONS

*****

11.10   Except as provided herein, no provision of this Agreement shall be amended or modified unless by agreement in writing duly subscribed and acknowledged with the same formality as this Agreement."

¶ 7        On January 20, 2023, petitioner filed a motion to modify or terminate his maintenance obligations, on the basis that he anticipated retiring from his full-time employment on February 3, 2023. Respondent subsequently filed a complaint for declaratory judgment, requesting therein that the circuit court deny petitioner's motion to modify or terminate his maintenance obligations.

¶ 8        On April 25, 2023, the circuit court entered an order denying respondent's complaint for declaratory relief and certifying the denial for interlocutory appeal. Respondent now appeals from the order.

¶ 9                                    II. ANALYSIS

¶ 10        Respondent argues that the circuit court erred by denying her complaint for declaratory judgment that petitioner's maintenance obligations cannot be modified or terminated. In

3

declaratory judgment actions, standing is a preliminary question that must be considered at the outset. *Flynn v. Ryan*, 199 Ill. 2d 430, 438 n. 1 (2002). Consequently, although petitioner does not challenge respondent's standing to obtain declaratory relief, we will nevertheless begin by analyzing the issue. See *AIDA v. Time Warner Ent.*, 332 Ill. App. 3d 154, 158–59 (2002) (addressing the issue of standing, despite the defendant's failure to assert lack of standing as an affirmative defense in its earlier motion to dismiss).

¶ 11 "The essential requirements of a declaratory judgment action are: (1) a plaintiff with a legal tangible interest; (2) a defendant having an opposing interest; and (3) an actual controversy between the parties concerning such interests." *Beahringer v. Page*, 204 Ill. 2d 363, 372 (2003). There exists an "actual controversy" between the parties when the underlying facts and issues of the case are not moot or premature, but rather give rise to "a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof." *Underground Contractors Ass'n v. City of Chi.*, 66 Ill. 2d 371, 375 (1977).

¶ 12 Relevant to the first two requirements for standing, section 2.3 of the Agreement obligates petitioner to pay respondent permanent maintenance. Thus, respondent has a legal tangible interest in receiving maintenance, and petitioner has an opposing interest regarding his obligation to pay said maintenance. As to the third requirement for standing, in his January 20, 2023, motion, petitioner seeks to modify or terminate his maintenance obligations to respondent, and respondent opposes the motion on the basis that the terms of the Agreement render petitioner's maintenance obligations nonmodifiable. Because respondent opposes petitioner's January 20, 2023, motion, there is an actual controversy between the parties concerning their respective interests and respondent has standing to obtain declaratory relief.

4

¶ 13	Respondent's standing having been determined, the next issue is whether she is correct that the terms of the Agreement render petitioner's maintenance obligations nonmodifiable. It is axiomatic that Illinois law favors the amicable settlement of property rights in cases of marital dissolution. *In re Marriage of Haller*, 2012 IL App (5th) 110478, ¶ 44. A marital settlement agreement is in the nature of a contract, and as such, its interpretation is governed by the ordinary rules of contract construction. See *City of Chi. Heights v. Crotty*, 287 Ill. App. 3d 883, 885 (1997) ("A settlement agreement is in the nature of a contract, and construction of such agreements are governed by the principles of contract law."); *Haisma v. Edgar*, 218 Ill. App. 3d 78, 87 (1991) ("A settlement agreement is considered a contract, and construction and enforcement of settlement agreements are governed by principles of contract law.").

¶ 14	Under the rules of contract construction, the primary objective in interpreting a contract is to give effect to the parties' intent, which is to be ascertained from the contract's language. *Bankier v. First Federal Sav. & Loan Ass'n of Champaign*, 225 Ill. App. 3d 864, 869 (1992). If the words in a contract are clear and unambiguous, then they must be given their plain and ordinary meaning. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). However, if the language of the contract is susceptible to more than one meaning, then it is ambiguous, and a court may consider extrinsic evidence to determine the parties' intent. *Lease Management Equipment Corp. v. DFO Partnership*, 392 Ill. App. 3d 678, 685 (2009).

¶ 15	A contract must be interpreted as a whole, so as to give meaning and effect to each of its provisions. *Camelot, Inc. v. Burke Burns & Pinelli, Ltd.*, 2021 IL App (2d) 200208, ¶ 48. The burden is upon the party asserting a marital settlement agreement to prove its existence by clear and convincing evidence, and such an agreement is binding, absent a finding of unconscionability. *In re Marriage of Stoker*, 2021 IL App (5th) 200301, ¶ 46–47. "The

interpretation of a marital settlement agreement is reviewed *de novo* as a question of law." *Blum v. Koster*, 235 Ill. 2d 21, 33 (2009).

¶ 16　　　　Respondent argues that petitioner's maintenance obligations cannot be modified or terminated because such would contravene the express language of their Agreement. Relevant to respondent's argument, section 2.3 of the Agreement obligates petitioner to pay respondent $2,742 per month in "permanent maintenance." Separately, section 10.1 of the Agreement states that the parties "agree that [the] Agreement shall not be changed, modified or altered by any order of any Court after [the] Agreement has been incorporated into a Judgment for Dissolution of Marriage, or after it has become effective by the entry of any Judgment for Dissolution of Marriage." Section 11.10 of the Agreement further states that "no provision of [the] Agreement shall be amended or modified unless by agreement in writing duly subscribed and acknowledged with the same formality as [the] Agreement."

¶ 17　　　　Respondent argues that the provisions of sections 10.1 and 11.10 are applicable to the terms of the entire Agreement and prohibit any such terms from being modified. Disagreeing, petitioner argues that a reading of the entire Agreement instead shows that the nonmodifiability provisions of sections 10.1 and 11.10 do not apply to provisions regarding permanent maintenance.

¶ 18　　　　Petitioner points to section 4.1 of the Agreement to illustrate his argument. Section 4.1 of the Agreement requires petitioner to maintain his current life insurance policy through his employer and to list respondent as an irrevocable beneficiary of a death benefit, "for as long as he is employed and has a duty to provide maintenance." This section also indicates that the court reserves jurisdiction on the issue, in the event that petitioner loses his employment or insurance coverage. Petitioner argues that such language shows that the parties intended for him to pay

6

permanent maintenance for only as long as he was employed, and that to find otherwise would vitiate the meaning of the provisions of section 4.1.

¶ 19    Petitioner does not explain exactly how he believes that the language in section 4.1 indicates that his maintenance obligations are contingent upon his continued employment. Additionally, because section 4.1 solely refers to petitioner's life insurance obligations, and not to his maintenance obligations, we find that the language therein does not give rise to his proposed reading.

¶ 20    Moreover, a finding that petitioner must continue paying respondent permanent maintenance after he retires is consistent with the provisions of section 4.1 and does not vitiate them as petitioner suggests. This is because section 4.1 states that two separate conditions must end before petitioner's life insurance obligations may terminate: (1) his employment, and (2) his maintenance obligations. As follows, if petitioner's employment were to end, yet his maintenance obligations to persist, then section 4.1 would still be given effect, so long as petitioner was required to continue to fulfill his life insurance obligations. Conversely, if petitioner's employment ending were, alone, sufficient to end his maintenance obligations, as he suggests, then there would be no need for section 4.1 to list both conditions, as one would be superfluous of the other, rendering meaningless the inclusion of one in light of the other. For these combined reasons, we reject petitioner's argument that his maintenance obligations are modifiable due to the existence of section 4.1.

¶ 21    Next, petitioner argues that his maintenance obligations are modifiable because his retirement constitutes a substantial change in circumstances, as contemplated under section 502(f) of the Illinois Marriage and Dissolution of Marriage Act ("Act") and, in the Agreement, the parties never clearly expressed an intent to make petitioner's maintenance obligations

7

nonmodifiable. Relevant to petitioner's argument, section 502(f) of the Act provides as follows, in pertinent part:

> "The parties may provide that maintenance is non-modifiable in amount, duration, or both. If the parties do not provide that maintenance is non-modifiable in amount, duration, or both, then those terms are modifiable upon a substantial change of circumstances. . . . The judgment may expressly preclude or limit modification of other terms set forth in the judgment if the agreement so provides."

750 ILCS 5/502(f) (West 2016).

¶ 22 Collectively, sections 10.1 and 11.10 of the Agreement prohibit the Agreement from being modified after it has been incorporated into, or been made effective by, a dissolution judgment, and unless done so by written agreement. However, the parties dispute whether these provisions clearly express their intent to make petitioner's maintenance obligations nonmodifiable. Petitioner argues that the provisions do not clearly express such an intent, and that the only way that the parties could have clearly expressed said intent is by including a provision in section 2.3 that specifically prohibits modification of permanent maintenance, which they did not.

¶ 23 The parties cite to *In re Marriage of Schweitzer*, 289 Ill. App. 3d 425 (1997) and *In re Marriage of Scarp*, 2022 IL App (1st) 210711, to support their respective positions. In *Schweitzer*, the parties executed a marriage settlement agreement, later incorporated into a dissolution judgment, that directed the husband to pay the wife a monthly amount for her support and maintenance. 289 Ill. App. 3d at 426. The settlement agreement also provided that the

8

husband's maintenance payment would "not terminate upon the occurrence of any of the statutory events for the termination of maintenance, except for the death of either party," and that the settlement agreement was nonmodifiable. *Id.* at 427. After the dissolution judgment was entered, the husband filed a petition to modify the judgment, asking that his maintenance obligations be reduced due to a material change in circumstances. *Id.* Namely, the husband alleged that he would be losing approximately $20,000 per year in income, and that the wife was preparing to sell property, which would provide her additional income. *Id.*

¶ 24　　The circuit court dismissed the husband's petition, ruling that his maintenance obligations were nonmodifiable. *Id.* On appeal, the appellate court explained that "parties may agree that maintenance shall not be modified or terminated except upon certain specified conditions," and that, "[w]hen the parties so agree, maintenance may be modified or terminated only under the circumstances specified in the agreement." *Id.* at 428. The appellate court also explained that the parties' intent to limit or preclude modification of maintenance obligations must be clearly manifested in the settlement agreement. *Id.*

¶ 25　　Analyzing the case before it, the appellate court then found that, by agreeing that the entire settlement agreement was nonmodifiable, the parties clearly expressed their intent that the maintenance provisions were likewise nonmodifiable. *Id.* at 429. The appellate court ultimately concluded that the settlement agreement precluded the husband's maintenance obligations from being modified, and affirmed the circuit court's dismissal of the husband's petition. *Id.*

¶ 26　　Similarly, in *Scarp*, the circuit court entered a dissolution judgment that incorporated a marital settlement agreement between the parties. *Scarp*, 2022 IL App (1st) 210711 ¶ 3. The settlement agreement provided for the husband to pay the wife a monthly amount in maintenance, for 163 months following entry of the dissolution judgment, or until the wife

9

remarried, she cohabitated for more than 6 months, or the death of either party. *Id.* The settlement agreement also stated that it could not be changed, altered, or modified after it had been incorporated into, or made effective by, a dissolution judgment, except by the parties' mutual assent and via a signed written agreement. *Id.*

¶ 27    After the circuit court entered the dissolution judgment, the husband filed a petition, later amended, to modify or terminate his maintenance obligations, on the basis that the wife had earned more money than he had during one year and had increased her overall earnings during two other years. *Id.* ¶¶ 4–5. The circuit court denied the husband's request to modify or terminate his maintenance obligations, finding that the settlement agreement rendered those obligations nonmodifiable. *Id.* The appellate court affirmed the circuit court's denial, similarly finding that the provision in the parties' settlement agreement that the agreement could not be changed, altered, or modified except by the parties' mutual assent clearly indicated an intent to make the husband's maintenance obligations nonmodifiable. *Id.* ¶¶ 15, 25.

¶ 28    Like the marital settlement agreements in *Schweitzer* and *Scarp*, the parties' Agreement in this case contains provisions requiring petitioner to pay respondent a monthly amount in maintenance, and prohibiting the Agreement from being modified after it has been incorporated into, or made effective by, a dissolution judgment, and unless by written agreement. Thus, we find that, by stating in sections 10.1 and 11.10 that the Agreement was nonmodifiable, the parties clearly demonstrated their intent to make petitioner's maintenance obligations likewise nonmodifiable under section 2.3.

¶ 29    However, petitioner asserts that, if his maintenance obligations are deemed nonmodifiable, then after he retires, he will have to continue paying respondent maintenance from his pension, even though, pursuant to section 5.1(d) of the Agreement, she would also then

10

be receiving half the value of his employment and retirement accounts. Petitioner argues that respondent's ability to recover both maintenance and half the value of his employment and retirement accounts renders the Agreement unconscionable.

¶ 30    Although a settlement agreement is not ordinarily subject to appellate review because it is considered a recording of the parties' agreement, rather than a judicial determination of the parties' rights, a settlement agreement can be set aside if it is shown to be unconscionable. *In re Marriage of Baecker*, 2012 IL App (3d) 110660, ¶ 25. "A marriage settlement is unconscionable if there is 'an absence of a meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *In re Marriage of Bielawski*, 328 Ill. App. 3d 243, 251 (2002). In determining whether a settlement agreement is unconscionable, we must consider the following two factors: (1) the conditions under which the agreement was made, and (2) the economic status of each party that results from the agreement. *In re Marriage of Hamm-Smith*, 261 Ill. App. 3d 209, 219 (1994). To rise to the level of being unconscionable, a marital settlement agreement "must be improvident, totally one-sided[,] or oppressive." *In re Marriage of Labuz*, 2016 IL App (3d) 140990, ¶ 51.

¶ 31    Related to the first unconscionability factor, petitioner does not allege that any conditions under which the Agreement was made warrant the settlement being set aside. Nor, from our review of the record, are we aware of any such conditions. This case involves the dissolution of a 34-year marriage, and the parties presumably considered their history and the equities of their respective situations in reaching the terms of the Agreement. Additionally, both were represented by counsel and had access to legal advice throughout the process of preparing the Agreement, and there is nothing tending to show that petitioner did not know or intend any terms of the Agreement at the time it was made.

11

¶ 32    As to the second factor, while petitioner asserts that a finding that his maintenance obligations are nonmodifiable would permit respondent to receive a monthly maintenance payment in addition to half of his employment and retirement accounts, courts have repeatedly explained that the mere fact that a settlement agreement favors one party over another does not, alone, render it unconscionable. See, *e.g.*, *In re Marriage of Gorman*, 284 Ill. App. 3d 171, 181 (1996) ("'[T]hat an agreement merely favors one party over another does not make it unconscionable.' [Citation.]"); *In re Marriage of Gibson-Terry and Terry*, 325 Ill. App. 3d 317, 325 (2001).

¶ 33    Additionally, although, under section 5.1(d) of the Agreement, respondent may recover half of petitioner's employment and retirement accounts, petitioner himself is still entitled to receive the remaining half. Pursuant to section 5.1 of the Agreement, petitioner is also entitled to receive one of the parties' two automobiles and half of the value of the parties' banking and investment accounts, among other marital property. Thus, it cannot be said that the provisions of the Agreement place him in an economic status that renders the settlement so improvident, one-sided, or oppressive as to be unconscionable, and we reject his argument otherwise.

¶ 34    Petitioner has failed to show that the Agreement is unconscionable, and so it remains valid. Furthermore, the record is devoid of any indication that the parties executed a written agreement, pursuant to section 11.10, amending the terms of section 2.3 to make petitioner's maintenance obligations modifiable. Consequently, we find that petitioner's maintenance obligations are nonmodifiable, and that the circuit court erred by denying respondent's complaint for declaratory judgment.

¶ 35                                III. CONCLUSION

12

¶ 36 For the foregoing reasons, we reverse the circuit court's order denying respondent's complaint for declaratory relief and remand the cause for further proceedings.

¶ 37 Reversed and remanded.

¶ 38 JUSTICE DAVENPORT, specially concurring:

¶ 39 I agree the circuit court's ruling should be affirmed for the reasons stated by the majority. I write separately, however, to make clear that the outcome here—a permanent and nonmodifiable maintenance payment—flies in the face of common sense. Due to an improvidently drafted marital settlement agreement, petitioner is required to make maintenance payments to respondent from his pension distribution when respondent, under the same agreement, has already been awarded a significant portion of that asset. I believe the concept of permanence goes to duration, not amount. The result in this case is absurd but legally correct nonetheless.