2025 IL App (1st) 221834-U

SECOND DIVISION
March 26, 2025

No. 1-22-1834

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF ALBERT ZISOOK, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant/Cross-Appellee, | ) | Cook County. |
| | ) | |
| and | ) | 13 D 10585 |
| | ) | |
| NITZA ZISOOK, | ) | The Honorable |
| | ) | Rosa Maria Silva, |
| Respondent-Appellee/Cross-Appellant. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Van Tine and Justice Ellis concurred in the judgment.

ORDER

¶ 1    *Held*:   The judgment of the circuit court of Cook County is affirmed; the provision in the parties' marital settlement agreement requiring petitioner to pay respondent 50% of all future deferred compensation arising from petitioner's employment is unambiguous, and construing the agreement as a whole the provision is limited to deferred compensation that is marital property.

¶ 2    In 2013, petitioner, Albert Zisook, filed a petition for dissolution of marriage to respondent, Nitza Zisook. In 2015, the circuit court of Cook County entered a judgment of dissolution of marriage that incorporated the parties' marital settlement agreement. On May 22, 2019, respondent filed a Verified Petition for Finding of Indirect Civil Contempt Regarding Petitioner's Failure to Abide by the Judgment for Dissolution of Marriage and for Other Relief. On July 1, 2022, the trial court entered an order that petitioner pay respondent a portion of the amount respondent sought in the petition.

¶ 3    For the following reasons, we affirm.

¶ 4                          BACKGROUND

¶ 5    We limit our summation of the facts to only those matters relevant to the issue in this

appeal. As previously stated, on August 11, 2015, the trial court entered a judgment of

dissolution of the parties' marriage incorporating the parties' marital settlement agreement

(MSA). The MSA contains a provision concerning petitioner's deferred compensation payments

from petitioner's former employer, Citadel, LLC. The relevant portion of the MSA reads as

follows:

"Article III

Deferred Compensation Payment

3.1    The parties acknowledge that by way of his current position of

employment, [petitioner] holds an interest in certain deferred compensation funds.

The parties further stipulate and acknowledge that all taxes due and owing on said

deferred compensation funds have been paid in full. The net distributions to be

hereafter received are as follows:

- June 2015  $183,812;

- June 2016  $244,785;

- June 2017  $182,427;

- June 2018  $164,678.

3.2    Each party shall be awarded one-half (1/2) of all of the aforestated

distributions and any future deferred compensation distributions [petitioner]

receives as a result of his employment at Citadel, LLC. [Petitioner] shall remit to

[respondent] her 50% share of each distribution within 7 days of receipt.

[Petitioner] shall also tender copies of any documents received in conjunction with his receipt of said distributions. Following said conveyance, each party shall be awarded their respective share of said deferred compensation distributions as their sole and exclusive property, free and clear of all claims by the other."

¶ 6 On October 3, 2016, Citadel, LLC terminated petitioner. There is no dispute regarding the payments that were itemized in the judgment. The matter in dispute in this appeal is that, on February 2, 2018, January 11, 2019, and February 5, 2019, petitioner received payments from his former employer totaling $390,158. Those payments were part of petitioner's deferred compensation. Petitioner claims that although the payments were deferred compensation payments, the deferred compensation in those payments was earned after the dissolution of the marriage and, therefore, was not marital property. Therefore, he was not required to pay respondent 50%.

¶ 7 Respondent claims the clear terms of the marital settlement agreement required petitioner to pay respondent 50% of *all* future deferred compensation from Citadel, regardless of whether it was marital property.

¶ 8 On May 22, 2019, respondent filed a petition for a finding of indirect civil contempt for failure to abide by the judgment. The petition alleged that petitioner failed to pay respondent "her equal (50/50) share of the deferred compensation payments received by [petitioner] received [*sic*] on February 2, 2018, January 11, 2019 and February 5, 2019." The parties both filed motions for summary judgment. Following the trial court's rulings on the parties' summary judgment motions, the only issue remaining was whether petitioner complied with the requirement to remit to respondent one-half of "any future deferred compensation distributions

1-22-1834

[petitioner] receives as a result of his employment" not specifically delineated in section 3.1 of the MSA. The matter proceeded to an evidentiary hearing.

¶ 9    At the evidentiary hearing the trial court heard testimony from Cheryl Timko, an employee of petitioner's former employer, regarding the deferred compensation program; Reuben Bernick, respondent's former attorney, regarding the meaning of certain provisions of the MSA; respondent; and petitioner.

¶ 10    Timko testified about the Citadel Employee Incentive Program, LLC, which is known as CEIF, LLC or CEIF. Petitioner's participation in CEIF through his bonuses is petitioner's deferred compensation. Under CEIF, employees who receive a bonus have their bonus granted, in part, in "long-term points" that are converted into a contribution to CEIF, LLC. These contributions vest three and one-half years from the date they are granted. Once vested, if the employee has been employed through the date when the points were granted, the employee receives a cash payment for the points. Timko testified regarding an exhibit showing petitioner's points for 2015. The exhibit states that petitioner is "eligible to receive an award of Participation Points for the 2015 Service Year." Timko testified that petitioner's 2015 participation points would be granted March 1, 2016.

¶ 11    Bernick was the attorney who previously represented respondent. The trial court permitted Bernick to testify to his understanding of the meaning of provisions of the MSA including sections 3.1 and 3.2. The MSA contains separate provisions for maintenance (Article II) and deferred compensation (Article III). The payments listed in section 3.1 of the MSA are deferred compensation that petitioner received through participation in CEIF. The deferred compensation is paid out in the third year after it is awarded. Over objection, Bernick testified as to his understanding of the meaning of section 3.2 of the MSA. Bernick testified,

"[Petitioner] was employed at Citadel in 2015, therefore he was eligible for an award, an employee incentive award in 2016 for 2015. But because the parties were divorced in 2015 we did not know what the amount of the award that he would receive in 2016 would be, so we put in 3.2 to account for the fact that [respondent] should get half of that *because it was during the marriage*. But we didn't know what the amount was, so we put in 3.2 so that the—so whatever he got from the award from 2016 which would be paid in 2019 she'd also have her share of that." (Emphasis added.)

When asked if there were any limitations on respondent's receipt of the deferred compensation payments in Article III Bernick testified, "No. This was property. This was not income, so she got her amount." Later, Bernick explained, "Article III is a property provision. It's not income anymore, it's not maintenance. It is a vested right and therefore [respondent] was to get half of it the way she got half of the other *marital assets*." (Emphasis added.)

¶ 12    Respondent testified at the evidentiary hearing, in pertinent part, that she thought that "3.1 was what was known at the time, and 3.2 was what would be coming to me as a result of the future investments." Respondent testified that the proceeds petitioner received in 2015 was "money that went in [(invested in CEIF)] in 2012; proceeds in 2016 were invested in 2013; proceeds in 2017 were invested in 2014; and proceeds in 2018 were invested in 2015 [(when the marriage was dissolved.)]" At the time of the agreement respondent was "unaware of the specific amounts as to future deferred compensation distributions." After the trial court entered the dissolution judgment petitioner received additional deferred compensation payments after the employer terminated petitioner.

¶ 13    Petitioner testified, in pertinent part, that the provision for deferred compensation was part of the division of marital property. Petitioner testified that Citadel gave petitioner three payments in 2018 and 2019 to satisfy petitioner's interest in the deferred compensation plan funded with petitioner's 2015 and 2016 bonuses. Petitioner testified that petitioner never agreed to give respondent money from his 2016 bonus that went into deferred compensation. Petitioner explained, "That was post-divorce and I owed [respondent] maintenance after the marriage. I owed her the delayed division of marital property, but that's it, maintenance and the delayed division of the marital property that was not available to divide earlier." Petitioner testified that part of his annual bonus went into CEIF, or deferred compensation. The four deferred compensation payments listed in section 3.1 of the MSA represent bonuses awarded to petitioner in 2012 through 2015. Petitioner paid respondent 50% of those payments. Petitioner testified he received deferred compensation payments after petitioner received the payments delineated in section 3.1 of the MSA. Specifically petitioner received payments of $209,013 on February 2, 2018, $171,555 on January 11, 2019, and $9,590 on February 5, 2019. Petitioner testified that he paid respondent one-half of the February 2, 2018, deferred compensation payment. Petitioner later testified that of the $209,013 payment on February 2, 2018, petitioner paid respondent $82,339. That payment occurred in August 2018. The additional payments from Citadel were to satisfy petitioner's interest in the deferred compensation plan funded with petitioner's 2015 and 2016 bonuses. Petitioner testified that he paid respondent one-half of the 2015 contribution. Petitioner testified that respondent did not have a share of the January or February 2019 payments.

¶ 14    Respondent further testified that she received nothing from the deferred compensation petitioner received after being terminated from employment. Respondent testified that the

approximately $82,000 she received in August 2018 represented payment for the approximately $164,000 June 2018 payment listed in the MSA.

¶ 15 The trial court orally ruled as follows:

"THE COURT: This Court believes a portion of that was what was earned when he was employed in 2015. And I'm not quite sure exactly what portion of that was earned in 2015 but she would be entitled to 50 percent of that. Now the other monies that were received in 2019 were earned, the Court believes, after the divorce, so she would not be entitled to that. So based on what I've heard, the motions I've read, and what I reviewed, I believe that she's entitled to a portion of the 209,013."

¶ 16 The court stated respondent's attorneys would have the opportunity to go through petitioner's bank records to determine whether petitioner received the approximately $209,000 plus the approximately $164,000 listed in section 3.1 in 2018. On July 1, 2022, the trial court entered a written order. The written order stated, in pertinent part, as follows:

"A. Respondent has a claim pursuant to Section 3.2 of the parties' Judgment for Dissolution of Marriage to 50% of the CEIF, LLC payment of $209,013.00 paid to Petitioner on February 2, 2018;

B. Respondent does not have a claim pursuant to Section 3.2 of the parties' Judgment for Dissolution of Marriage to the payments received from the CEIF, LLC by Petitioner in 2019;

C. Petitioner paid Respondent $82,339.00 after February 2, 2018.

* * *

       1.     Petitioner shall pay to Respondent the sum of $22,167.50 to complete his compliance with Section 3.2 of the parties' Judgment for Dissolution of Marriage."

¶ 17    On July 27, 2022, respondent filed a motion to reconsider the July 1, 2022, order. On October 28, 2022, the trial court entered a written order denying respondent's motion to reconsider. The trial court's order found, in part, that "[t]he money [petitioner] received in January and February of 2019 was non-marital property [petitioner] acquired in 2016. Respondent does not have a claim pursuant to Section 3.2 of the parties' Judgment for Dissolution of Marriage to the payments received from CEIF by Petitioner in 2019."

¶ 18    On November 4, 2022, the trial court entered an order granting respondent's petition for attorney fees pursuant to 750 ILCS 5/508(a) and 508(b) for $8,238.75 (which petition was based on separate petitions for indirect civil contempt for failure to pay maintenance); making provision for the payment of maintenance; and finding that there are no other pending matters before the trial court and there is no just reason for delaying appeal.

¶ 19    On December 2, 2022, petitioner filed a notice of appeal from the trial court's November 4, 2022 order, as well as orders entered in September 2020 and March 2020. Five days later, on December 7, 2022, respondent filed a notice of cross-appeal from the July 1, 2022, order on respondent's petition for indirect civil contempt based on petitioner's failure to remit a portion of certain deferred compensation petitioner received and the October 28, 2022, order denying respondent's motion to reconsider the July 1 order.

¶ 20    On December 23, 2022, petitioner filed a motion to dismiss respondent's cross-appeal for lack of jurisdiction because respondent allegedly filed the notice of cross-appeal late. On January 6, 2023, this court ordered that motion taken with the case. However, on the same day, this court

granted respondent's motion for leave to file a late notice of cross-appeal. We now find that this court's order granting respondent leave to file a late notice of cross-appeal renders petitioner's motion to dismiss moot. Therefore, petitioner's motion is not considered, as moot.

¶ 21    On July 13, 2023, petitioner's attorney filed a motion to stay all proceedings on this appeal based on the death of petitioner. On July 19, 2023, this court granted the stay and ordered counsel for petitioner to file a status report. On September 27, 2023, petitioner's attorney filed a status report stating, in relevant part, that petitioner's widow (petitioner had since remarried), Shan Shan Tao, submitted an affidavit as petitioner's successor pursuant to California law.

¶ 22    On January 2, 2024, respondent filed a motion to lift the stay and enter a briefing schedule. Respondent argued that because her appeal is from a matter involving post-judgement enforcement of the dissolution judgment the appeal remains viable notwithstanding petitioner's death. On January 10, 2024, this court granted respondent's motion to lift the stay. On February 1, 2024, petitioner's attorney filed a motion to withdraw as counsel. The motion to withdraw stated that "[n]o estate has been opened in relation to [petitioner] and no executor or personal representative has been appointed by a court of competent jurisdiction," therefore counsel has no client and no authority to pursue action on behalf of petitioner. On February 7, 2024, this court granted petitioner's attorney's motion to withdraw as counsel.

¶ 23    On February 26, 2024, respondent filed a motion to dismiss petitioner's appeal. On March 14, 2024, this court granted respondent's motion to dismiss petitioner's appeal and ordered respondent's cross-appeal to proceed. On May 22, 2024, this court ordered respondent's cross-appeal taken on respondent's cross-appellant brief only.

¶ 24    This appeal followed.

¶ 25                                 ANALYSIS

¶ 26     We must first address this court's jurisdiction to decide this appeal after petitioner's death. "[A]n appellate court has a duty to consider its own jurisdiction whether or not the issue was raised by the parties." *In re Marriage of Thomas*, 213 Ill. App. 3d 1073, 1074 (1991). Respondent argues that despite petitioner's death "the trial court *** retains jurisdiction to finish the job of enforcing the [parties'] marital settlement agreement." Respondent also notes that the MSA provided that "[t]his Agreement shall be binding upon and shall inure to the benefit of the heirs, executors, administrators, assigns, devisees and grantees of each of the parties." In support, respondent cites *In re Marriage of Platt*, 2015 IL App (2d) 141174. There, the court recognized that "[w]hen a party spouse dies *before* the entry of a dissolution judgment, the dissolution action abates." (Emphasis added.) *In re Marriage of Platt*, 2015 IL App (2d) 141174, ¶ 18. However, the death of a party *after* a final dissolution judgment is entered does not result in abatement of the dissolution action. *In re Marriage of Platt*, 2015 IL App (2d) 141174, ¶ 18. See also *Fox v. Coyne*, 25 Ill. App. 2d 352, 359-60 (1960) (citing *Dinet v. Eigenmann*, 80 Ill. 274 (1875)), 735 ILCS 5/2-1008(a), (b)(2) (West 2024). In *Cross v. Cross*, 5 Ill. 2d 456 (1955), our supreme court found that the "right to alimony, as distinguished from [the] right to property held by [the former spouse] but equitably belonging to [the surviving spouse] cease[s] with the death of the [payor spouse."] *Cross*, 5 Ill. 2d at 464. But the right to property allegedly belonging at least in part to the surviving spouse held in the name of the ex-spouse survives the death of the ex-spouse. *Cross*, 5 Ill. 2d at 465. Petitioner's death does not impact the validity of the judgment or, therefore, this court's jurisdiction to resolve this appeal. See *Hannah v. Gilbert*, 207 Ill. App. 3d 87, 91 (1990) ("the Probate Act's limitation on the payment of claims may affect the future collectability of any judgment rendered against the decedent, but did not bar the plaintiffs' action" (citing *In re Worrell's Estate*, 92 Ill. 2d 412, 417-18 (1982))), see also 735 ILCS 5/2-

1008(a), (b)(2) (West 2024) ("Abatement; change of interest or liability; substitution of parties"). We therefore proceed to address the merits of respondent's appeal.

¶ 27    This is an appeal of a judgment denying a petition for a finding of indirect civil contempt based on alleged noncompliance with a judgment of dissolution of marriage incorporating a marital settlement agreement. "[W]hether a party is guilty of contempt is a question of fact for the trial court, and *** a reviewing court will not disturb the finding unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion." *In re Marriage of Barile*, 385 Ill. App. 3d 752, 759 (2008) (quoting *In re Marriage of Logston,* 103 Ill. 2d 266, 286-87 (1984)). "For a finding of fact to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent." *In re Marriage of Harnack & Fanady*, 2022 IL App (1st) 210143, ¶ 47. "A clear abuse of discretion takes place when the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *In re Marriage of Anderson*, 409 Ill. App. 3d 191, 199 (2011) (quoting *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009)).

¶ 28    "A marital settlement agreement is construed in the manner of any other contract, and the court must ascertain the parties' intent from the language of the agreement. [Citations.] The interpretation of a marital settlement agreement is reviewed *de novo* as a question of law." *Blum*, 235 Ill. 2d at 33. The question on appeal is whether the provision in the parties' MSA for "any future deferred compensation distributions" encompasses deferred compensation distributions of non-marital property. We find that the MSA does not encompass non-marital property in the form of deferred compensation.

¶ 29    Respondent argues the MSA is unambiguous, and reading the contract as a whole and giving the words used their common and generally accepted meaning, the use of "any future" in

the MSA means "exactly that," *i.e.*, "any" deferred compensation received, not just deferred compensation that is part of the marital property, because "[t]he MSA does not say that." Respondent does not argue that the 2019 payments are marital property. Respondent argues that "any" means "all" and "is not limited by the term marital or any other." (Emphasis omitted.) Respondent argues that petitioner's "attempt to add the words 'marital property' is an improper rewriting of the agreement by the attempted inclusion of another term that was not in paragraph 3.2 of the agreement." Respondent claims that "[t]here were no limitations on [respondent's] receipt of the deferred compensation payments in Article III."

¶ 30    The question on appeal raises an issue of contract interpretation. Despite the fact this appeal arose from the denial of a petition for indirect civil contempt, to the extent our resolution of the issue requires the interpretation of the parties' agreement, our review is *de novo*. *In re Marriage of Scarp and Rahman*, 2022 IL App (1st) 210711, ¶ 11, see also *In re Marriage of Villela*, 2016 IL App (1st) 152115-U, ¶ 23 ("to the extent it would be necessary for this court to interpret the terms of the marital settlement agreement, we would do so as a pure question of law, like we would any other contract, without deference to any interpretation by the trial court—a *de novo* review"). "Usual principles of contract interpretation apply to MSAs. [Citation.] The court thus ascertains the parties' intent from the plain language of the MSA itself. [Citation.]" *In re Marriage of Scarp & Rahman*, 2022 IL App (1st) 210711, ¶ 11.

> "When interpreting a contract to ascertain the parties' intent, we look to the language of the contract, keeping in mind that we must consider the contract as a whole, viewing each provision in light of the other provisions. [Citation.] We cannot determine the parties' intent by looking at a provision in isolation or by looking at disparate, isolated portions of the contract. [Citation.] If, after

performing this examination of the entire contract, the language is clear and unambiguous, it will be given its plain, ordinary, and popular meaning; if, however, the language of the contract is susceptible to more than one reasonable meaning, it is ambiguous, and we may resort to extrinsic evidence to determine the parties' intent. [Citation.]" *In re Marriage of Grandt*, 2022 IL App (2d) 210648, ¶ 25.

"In construing [an MSA,] courts must give effect to each word so as not to render any part meaningless or superfluous." *In re Estate of Tacher*, 2024 IL App (1st) 231016, ¶ 16, *Olson v. Olson*, 114 Ill. App. 3d 28, 32 (1983) ("A court must construe an agreement so as to give effect to each of its provisions and avoid constructions which would render a provision superfluous.").

¶ 31    Respondent's argument relies on the broadest possible interpretation of the term "any future deferred compensation distributions." We recognize that the term "any" has been construed to be "all-embracing in *** scope." *Leslie Car Wash Corp. v. Department of Revenue*, 69 Ill. 2d 488, 492 (1978) (quoting *Vause & Striegal, Inc. v. McKibbin*, 379 Ill. 169, 172 (1942)), *Chanen v. Chanen*, 2023 IL App (1st) 221060-U, ¶ 25 (citing *Leslie Car Wash Corp.*, 69 Ill. 2d at 492), see also https://www.merriam-webster.com/dictionary/any (defining "any" to mean "every—used to indicate one selected without restriction"). Nonetheless, we may not read the provision for "any future deferred compensation distributions" in isolation. Rather, we must view that provision, like any other, in light of the other provisions. *In re Marriage of Grandt*, 2022 IL App (2d) 210648, ¶ 25.

¶ 32    We find that respondent's construction of the MSA depends upon reading the provision at issue in isolation. Our construction of the MSA is limited to a determination of the meaning of "any future deferred compensation distributions" based on the plain language of the MSA read as

a whole. We find that the provision is unambiguous. Whether a term in a contract is ambiguous must be determined from the context in which it is used. *Forest Preserve District of Du Page County v. Brookwood Land Venture*, 229 Ill. App. 3d 978, 982 (1992). We find that "any" in this context is not susceptible to more than one reasonable meaning. The contextual "fact[] on which the meaning of the language ['any future deferred compensation distributions'] depends" (*Brookwood Land Venture*, 229 Ill. App. 3d at 982) is stated in Article III of the MSA. Section 3.1 of the MSA begins, "The parties acknowledge that by way of his current position of employment, [petitioner] holds an interest in certain deferred compensation funds." The fact petitioner held an interest in certain deferred compensation funds prior to the dissolution identifies those funds as marital property. Thus, the reasonable interpretation of the MSA is that "any future deferred compensation distributions" means any future distributions of deferred compensation funds in which petitioner held an interest, *i.e.*, that are marital property. This includes deferred compensation granted to petitioner in 2015 in the form of long-term participation points. See *In re Marriage of Peters*, 326 Ill. App. 3d 364, 368-69 (2001) (trial court erred in concluding that no part of stock bonus earned during the marriage could be marital property where recipient-spouse had to "remain employed for a certain time before [they] will have a right to receive it").

¶ 33    Additionally, respondent's argument nullifies the portion of Article III of the MSA that states that petitioner "holds an interest in certain deferred compensation funds," which distinguishes them as marital property. If the parties did not intend to limit "any future deferred compensation payments" to marital property there would be no need to include this language—if respondent was to receive one-half of any and all of petitioner's future deferred compensation payments then it makes no difference whether petitioner currently held an interest in them or not.

If this language is not interpreted to limit the scope of Article III to marital property, then it is meaningless. "Courts will not interpret a contract in a manner that nullifies or renders contractual provisions meaningless." *In re Marriage of Scarp & Rahman*, 2022 IL App (1st) 210711, ¶ 16 (citing *Thompson v. Gordon*, 241 Ill. 2d 428, 442 (2011)).

¶ 34    Based on the unambiguous language of the MSA we find that respondent is entitled to one-half of the 2018 deferred compensation payment based on petitioner's 2015 bonus in long-term participation points; but, respondent has no claim to the deferred compensation payments petitioner received in 2019. Accordingly, the trial court's judgment denying respondent's petition for indirect civil contempt is not against manifest the weight of the evidence or an abuse of discretion. *In re Marriage of Barile*, 385 Ill. App. 3d at 759. Therefore, the trial court's judgment is affirmed.

¶ 35    Next, respondent argues that the trial court found that petitioner violated the dissolution judgment by failing to pay respondent one-half of the February 2018 deferred compensation payment, but the court "failed to grant [respondent] attorneys' fees against [petitioner] for bringing and trying [the] petition." The petition at issue in this appeal asked for "an Order requiring the Petitioner to be solely responsible for the reasonable attorney's fees and costs incurred by the Respondent in the preparation, presentation and litigation of the instant Petition, pursuant to 750 ILCS 5/508." Section 508 of the Act provides for an award of attorney fees in connection with the enforcement of any order or judgment under the Dissolution Act. 750 ILCS 5/508(a)(2) (West 2024). Respondent partially prevailed on the petition by securing a judgment that petitioner owed respondent $22,167.50. However, respondent failed to secure a ruling from the trial court for fees associated with enforcing that portion of the judgment. "A movant has the responsibility to obtain a ruling on his motion if he is to avoid forfeiture on appeal." (Internal

quotation marks omitted.) *Ramirez v. Chicago Board of Election Commissioners*, 2020 IL App (1st) 200240, ¶ 37 (quoting *People v. Urdiales*, 225 Ill. 2d 354, 425 (2007)). We find that any issue as to attorney fees for enforcing the portion of the dissolution judgment at issue here is forfeited for appeal.

¶ 36    Finally, based on our finding, we have no need to address respondent's alternate argument that the trial court erred by failing to reconsider its judgment.

¶ 37                                CONCLUSION

¶ 38    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 39    Affirmed.